**In re Stanford Floyd SANDERS and Julie Ann Sanders, Debtors.**

**Bankruptcy No. 86–00498(N).**

United States Bankruptcy Court, E.D. Missouri, N.D.

Jan. 29, 1987.

James S. Cole, Kirksville, Mo., for debtors.

Fredrich J. Cruse, Hannibal, Mo., trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### INTRODUCTION

This contested matter presents the question of whether either the federal or Missouri garnishment statute permits a bankrupt debtor to exempt pre-bankruptcy earnings from property of the estate. The Court holds that although the federal garnishment statute does not apply to Missouri debtors, the Missouri statute does permit a Missouri bankrupt debtor to exempt pre-bankruptcy earnings from property of the estate.

### FACTS

The Debtors, husband and wife, filed their voluntary joint petition under Chapter 7 of the Bankruptcy Code on February 28, 1986. On the date their petition was filed, the husband had accrued but unpaid wages of $1,100. No creditor was then attempting to garnish his wages and on their Schedule B–4, Debtors claimed $990 of these pre-bankruptcy earnings as exempt under the Missouri garnishment statute, Mo.Rev.Stat. § 525.030.[1] In the event their exemption claim were disallowed under that statute, Debtors then claimed $825 of said pre-bankruptcy earnings as exempt under the federal garnishment statute, 15 U.S.C. § 1673. The trustee timely objected to their claim of exemption on April 15, 1986, and the matter has been submitted to the Court upon the Stipulation and Briefs of the parties.

1. Debtors' Schedule B–4 is attached hereto as an appendix.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B), which the Court may hear and determine.

## DISCUSSION

Section 522(b) of the Bankruptcy Code allows a state to "opt out" of the federal exemption scheme and to substitute its own scheme of exemptions. Missouri "opted out" on August 13, 1982, the effective date of Mo.Rev.Stat. § 513.427. That statute states:

> "Bankruptcy, Exemptions Allowed— Every person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the state of Missouri or under federal law, other than Title 11, United States Code, Section 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, Section 522(d)."

Given the statutory language, two questions arise. First, are a bankrupt debtor's pre-bankruptcy earnings "exempt from attachment and execution" under the federal garnishment statute, 15 U.S.C. § 1673? Second, are a bankrupt debtor's pre-bankruptcy earnings "exempt from attachment and execution" under the Missouri garnishment statute, Mo.Rev.Stat. § 525.030?

### The Federal Garnishment Statute

■ In 1968, Congress enacted the Federal Consumer Credit Protection Act, also known as the Truth in Lending Act, 15 U.S.C. §§ 1601–1693r.

> "Title III of the Act limits the amount which can be garnished. Under Title III a creditor may garnish the lesser of 1) 25 percent of a debtor's weekly disposable earnings or 2) the amount by which the debtor's disposable earnings exceeds thirty times the federal minimum hourly wage. 'Disposable earnings' means the debtor's salary less deductions required by law.
>
> To illustrate, assume that D's weekly salary is $280 and that $80 is deducted for taxes and Social Security. D's weekly disposable earnings are $200. Under option one of Title III, a maximum of $50 (25 percent of $200) from D's weekly paycheck could be made subject to garnishment. To figure the amount garnishable under option two, the federal minimum wage, presently $3.35, is multiplied by thirty: $3.35 × 30 = $105. Under option two the excess over $105 ($200 —$105), or $95 of D's take-home pay could be made subject to garnishment. Because option one ($50) is less than option two ($95), $50 is the maximum amount which can be garnished. Under Title III, the lesser of the two amounts must be chosen....
>
> Title III allows the states to enact garnishment laws which increase the exemptions accorded by the Act and which do not decrease any federal benefit. Where state exemptions are more liberal, the state garnishment exemptions apply. Missouri adopted Title III verbatim and added an additional exemption. A Missouri resident who is a head of household may have only 10 percent of his wages garnished. Thus, if D is the head of a household, in Missouri, only $20 of his $200 weekly take-home pay could be garnished. Because the head of a family Missouri exemption is more liberal than those granted in Title III, the state exemption supersedes federal exemptions."

Speca, *A Survey of Missouri Debtor-Creditor Law,* 54 Univ. of Missouri at Kansas City L.Rev. 19, 34–35 (1985) (footnotes omitted); *see also,* 15 U.S.C. § 1677 (state garnishment law rather than the federal garnishment statute applies if state garnishment law provides for more limited garnishments than the federal statute).

It is interesting to note that if the federal garnishment statute had not been superseded by the Missouri garnishment statute, it would have created an exemption for

Missouri debtors by reason of Missouri's "opt out" statute which allows Missouri debtors federal exemptions other than those listed in Section 522(d) of the Bankruptcy Code. Although the Supreme Court decision of *Kokoszka v. Bedford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), has been construed by some courts to mean that the restriction on garnishment in Title III of the Federal Consumer Protection Act is not such a federal exemption, *see, e.g., Usery v. First Nat'l. Bank,* 586 F.2d 107 (9th Cir.1978); *Dunlop v. First Nat'l. Bank,* 399 F.Supp. 855 (D.Ariz.1975), the Court does not believe that *Kokoszka* warrants that construction.

"*Kokoszka* involved the narrow issues of whether an income tax refund is property of a debtor's estate and, if so, whether it was exempt under Title III of the Consumer Credit Protection Act. The Court correctly concluded that the refund was property of the estate since it was not necessary for a fresh start. The Court next correctly decided that the tax refund was not exempt. Although some language of the opinion intimates that Title III was not designed to apply *in* bankruptcy, but was only designed to *prevent* bankruptcy, *see* 417 U.S. at 650–51 [94 S.Ct. at 2436], the Court concluded that 'if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act.' *Id.* at 651 [94 S.Ct. at 2436]. The Court noted that the Bankruptcy Act, 'provides that the [Bankruptcy] Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States,' *id.* at 649 [94 S.Ct. at 2435] (quoting Bankruptcy Act § 6, 11 U.S.C. § 24 (1976) (repealed 1978)). The Court then went on to agree with the court of appeals that a tax refund did not come under title III's protection of 'earnings' or 'disposable earnings.' 417 U.S. at 651–52 [94 S.Ct. at 2436–37]. That result is justified since the debtor will have current earnings to protect with the exemption; tax refunds seem unrelated to what Congress was striving to protect.

To interpret *Kokoszka* as holding that title III is not an exemption under federal law *at all,* as courts recently have been doing, ... is unwarranted. In the first place, if *it* is not an exemption law, it is difficult to say *what is.* Indeed, it appears to be a paradigm of an exemption law, given the traditional goals of exemption laws. Second, *Kokoszka* must be interpreted in light of its facts; so interpreted it merely means that income tax refunds are not 'earnings' within title III. Third, because Congress made title III preemptive of all state laws that were less protective of debtors, *see* 15 U.S.C. §§ 1673(c), 1675, 1677 (1976), many states amended their laws to conform to title III. If these state laws—which supplanted wage *exemptions*—are now held to be something less than exemptions, in line with recent court interpretations of *Kokoszka,* protection of debtors' wages will be lost in bankruptcy although state legislatures clearly had no such intent."

Vukowich, *Debtors' Exemption Rights Under The Bankruptcy Reform Act,* 58 N.C. L.Rev. 769, 791 n. 192 (1980).

Because, however, the federal garnishment statute does not apply in Missouri, Debtors' alternative claim to exempt the husband's pre-bankruptcy earnings of $825 is without basis in law. The Trustee's objection, therefore, is to that extent meritorious.

### The Missouri Garnishment Statute

■ Given the inapplicability of the federal garnishment statute, Debtors' exemption claim turns on the answer to the second question posed above, namely, whether a bankrupt debtor's pre-bankruptcy earnings are "exempt from attachment and execution" under the Missouri garnishment statute, Mo.Rev.Stat. § 525.030. The Trustee has four arguments that the Missouri garnishment statute is not available to a bankrupt debtor. The Court, however, finds none of these arguments meritorious.

First, the Trustee argues that "property exempt from attachment and execution" is

completely enumerated in Chapter 513, Mo. Rev.Stat. Specifically, Section 513.430 of that Chapter contains an extensive list of exemptions and no reference is made to the state's garnishment statute.[2] The implication, the Trustee argues, is that Missouri did not intend its garnishment statute to provide an additional exemption for bankrupt debtors; for if it had so intended, at the very least the garnishment statute would have been referenced in Section 513.-430.

The Trustee's argument is not sound. The fact that a garnishment exemption is not included in Section 513.430 is of little consequence since there are numerous other undisputed exemptions not listed in that section or in any other section of Chapter 513. To mention but two examples, land not exceeding one acre or $100 in value and recorded as a burial ground or so used for at least ten years is exempt under Mo.Rev. Stat. § 214.190, and worker's compensation is exempt under Mo.Rev.Stat. § 287.260. For other examples, see, 7 Collier on Bankruptcy pp. 361–363 (15th Ed.1986). The Court, therefore, rejects the Trustee's first argument.

2. Section 513.430 states as follows:

**Property Exempt From Attachment and Execution**

The following property shall be exempt from attachment and execution to the extent of any person's interest therein:

(1) Household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments that are held primarily for personal, family or household use of such person or a dependent of such person, not to exceed one thousand dollars in value in the aggregate;

(2) Jewelry held primarily for the personal, family or household use of such person or a dependent of such person, not to exceed five hundred dollars in value in the aggregate;

(3) Any other property of any kind, not to exceed in value four hundred dollars in the aggregate;

(4) Any implements, professional books or tools of the trade of such person or the trade of a dependent of such person not to exceed two thousand dollars in value in the aggregate;

(5) Any motor vehicle, not to exceed five hundred dollars in value;

(6) Any mobile home used as the principal residence, not to exceed one thousand dollars in value;

(7) Any one or more unmatured life insurance contracts owned by such person, other than a credit life insurance contract;

(8) The amount of any accrued dividend or interest under, or loan value of, any one or more unmatured life insurance contracts owned by such person under which the insured is such person or an individual of whom such person is a dependent; provided, however, that if proceedings under Title 11 of the United States Code are commenced by or against such person, the amount exempt in such proceedings shall not exceed in value five thousand dollars in the aggregate less any amount of property of such person transferred by the life insurance company or fraternal benefit society to itself in good faith if such transfer is to pay a premium or to carry out a nonforfeiture insurance option and is required to be so transferred automatically under a life insurance contract with such company or society that was entered into before commencement of such proceedings. No amount of any accrued dividend or interest under, or loan value of, any such life insurance contracts shall be exempt from any claim for child support. Notwithstanding anything to the contrary, no such amount shall be exempt in such proceedings under any such insurance contract which was purchased by such person within six months prior to the commencement of such proceedings;

(9) Professionally prescribed health aids for such person or a dependent of such person;

(10) Such person's right to receive;

(a) A social security benefit, unemployment compensation or a local public assistance benefit;

(b) A veteran's benefit;

(c) A disability, illness or unemployment benefit;

(d) Alimony, support or separate maintenance, not to exceed five hundred dollars a month;

(e) A payment under a stock bonus, pension, profit-sharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person unless:

a. Such plan or contract was established by or under the auspices of an insider that employed such person at the time such person's rights under such plan or contract arose;

b. Such payment is on account of age or length of service; and

c. Such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409);

(11) The debtor's right to receive, or property that is traceable to, a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

The Trustee's second argument is no more persuasive. The Trustee correctly notes that no creditor was garnishing the Debtor in the case at bar at the time of his bankruptcy. The Trustee argues that even if the garnishment statute in some circumstances could provide an exemption for Missouri debtors, it cannot do so unless the garnishment is pending at the time of bankruptcy.

The principle which apparently underlies the Trustee's argument is that property may not be exempted in bankruptcy unless a process of attachment or execution has commenced against that property prior to the filing of the petition. If that principle was a correct statement of the law, however, bankrupts not subject to attachment or execution proceedings at the time of filing would lose their exemptions. For example, the Trustee's principle implies that unless foreclosure proceedings had commenced, the homestead exemption, Mo. Rev.Stat. § 513.475,[3] would not be available to bankrupt debtors. Since it is clear beyond any doubt that the homestead exemption applies in bankruptcy whether or not the bankrupt debtor's homestead is subject to attachment or execution proceedings at the time of bankruptcy, the Trustee's principle does not correctly state the law. The commencement of garnishment proceedings, therefore, cannot be a necessary condition to the availability of a garnishment exemption in bankruptcy. The Court, therefore, rejects the Trustee's second argument.

The Trustee's third argument is that Missouri's head of a family exemption, Mo. Rev.Stat. § 513.440, is the only statute which a bankrupt debtor may use to exempt pre-bankruptcy earnings and that, therefore, the garnishment statute may not be used for that purpose. To understand the Trustee's argument, Section 513.440 must be read together with a portion of Missouri's garnishment statute, Mo.Rev. Stat. § 525.030.2. These statutes provide as follows:

"**513.440. Other Property Exempt— Provisions—Exceptions.** Each head of a family may select and hold, exempt from execution, any other property, real, personal or mixed, or debts and wages, not exceeding in value the amount of eight hundred fifty dollars plus two hundred fifty dollars for each of such person's unmarried dependent children under the age of eighteen years, *except ten percent of any debt, income, salary or wages due such head of a family.*

\* \* \* \* \* \*

525.030.2.—The maximum part of the aggregate earnings of any individual for any workweek, after the deduction from those earnings of any amounts required by law to be withheld, which is subjected to garnishment may not exceed (a) twenty-five percentum, or, (b) the amount by which his aggregate earnings for that week, after the deduction from those earnings of any amounts required to be withheld by law, exceed thirty times the federal minimum hourly wage prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 in effect at the time the earnings are payable, or, (c) *if the employee is the head of a family and a resident of this state, ten percentum, whichever is less."* (Emphasis added).

If both statutes applied to bankrupt debtors, their clear import would be that a bankrupt head of a family would be permitted to exempt from property of the estate all but ten percent of accrued but unpaid wages at the time the bankruptcy petition was filed. The bankrupt debtor, however, would never have any rational reason to use the Section 513.440 wage exemption, since all wages capable of exemption could be exempted under Section 525.030, leaving the $850 plus exemption provided by Section 513.440 available to exempt other prop-

---

**3.** That section provides in part that

"The homestead of every person, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the value of eight thousand dollars, which is or shall be used by such person as a homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and execution."

erty from administration in bankruptcy. Indeed, in the case at bar the Debtors' Schedule B–4 (see appendix) exemplifies just this strategy. In effect, if the garnishment statute were held to permit bankrupt debtors to exempt ninety percent of their wages, Section 513.440, insofar as it purports to provide an exemption for wages, would be rendered surplusage. Since, if at all possible, every word in a statute should be given effect, the Trustee concludes that Section 513.440 is the only statute under which a bankrupt debtor may exempt prebankruptcy earnings.

While the Trustee's third argument has some superficial appeal, it cannot withstand close scrutiny. There are two problems with the argument. First, it is clear that as to non-bankrupt debtors, both Section 525.030 and Section 513.440 apply. Thus, in the non-bankruptcy context the surplusage problem identified above must inevitably resurface. Second, given that consequence, the question becomes what reason is there to treat non-bankrupt debtors more favorably than bankrupt debtors so far as the availability of exemptions is concerned. Missouri's "opt-out" statute clearly contemplates the same treatment for *both* classes of debtors. Moreover, it would be highly anomalous, if not unjust, if the position of creditors were improved upon a debtor's filing bankruptcy. *See generally, Matter of Brisette*, 561 F.2d 779 (9th Cir.1977). The Court, therefore, rejects the Trustee's third argument.

The Trustee's fourth argument is based upon a comparison of the federal exemption scheme with the Missouri exemption scheme. The Trustee suggests that even under the more debtor-oriented federal scheme, the federal garnishment exemption is not available to bankrupt debtors under Section 522(d) of the Bankruptcy Code. Missouri having "opted-out" of the federal exemption scheme, the Trustee argues that it would be contrary to Missouri's intent for the Court to find that Missouri bankrupt debtors may exempt property under the Missouri garnishment statute, one nearly identical to the federal garnishment statute. In sum, the Trustee concludes that such a holding would make Missouri's exemptions more generous to debtors than the federal exemptions, a policy not intended by this State's legislature when it "opted out."

The Court is not persuaded by the Trustee's fourth argument. It is true that in states which have not "opted out" debtors who choose the exemptions contained in Section 522(d) of the Bankruptcy Code cannot have a garnishment exemption under either federal or state law. It is also true that the Missouri garnishment statute, although somewhat more generous to debtors, is nearly identical to its federal counterpart. It does not follow, however, that the Missouri garnishment statute is not available to Missouri bankrupt debtors.

In his argument, the Trustee assumes that the federal exemption scheme is more debtor-oriented than the Missouri exemption scheme. On that assumption, he concludes that if in a state which has not "opted out" of the more debtor-oriented scheme, a debtor cannot have a garnishment exemption, a debtor in a state like Missouri which has "opted out" certainly cannot have one either.

The Trustee's assumption that the federal exemption scheme is more debtor-oriented than the Missouri exemption scheme is both question begging and ambiguous. This Court is charged with determining the intent of the Missouri legislature. It has only the statutes themselves from which to work, there being no written legislative history. If there is any basis for concluding that the federal exemption scheme is more debtor-oriented than the Missouri exemption scheme, that conclusion must be reached *after* examining the statutes, not before. Any other course begs the question.

There is also ambiguity in the assertion that the federal exemption scheme is more debtor-oriented than the Missouri exemption scheme. In one sense, "federal exemption scheme" means just the list of exemptions contained in Section 522(d) of

the Bankruptcy Code.[4] Whether the exemptions on that list are more debtor-oriented than the exemptions contained in Missouri's Chapter 513 is questionable. The Court finds that a comparison of the two sets of exemptions shows them merely to be different, each in some respects more *and* less generous to debtors than the other. *See*, Mordy, Dunn & Johnson, *Constitutionality of "Opt Out" Statutes Providing For Exemptions To Bankrupts*, 48 Mo.L.Rev. 627, 629–34 (1983). Therefore,

if the Trustee's assumption is that Section 522(d) of the Bankruptcy Code is more generous to debtors than the Missouri exemption scheme set forth in Chapter 513, the Court is not convinced that such an assumption is warranted.

"Federal exemption scheme" also could be taken to refer to the choice debtors are given in states which have not "opted out". In those states debtors can choose the exemptions set out in Section 522(d), in which

**4.** That Section states:

522(d) The following property may be exempted under subsection (b)(1) of this section:

(1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

(2) The debtor's interest, not to exceed $1,200 in value, one motor vehicle.

(3) The debtor's interest, not to exceed $200 in value in any particular item or $4,000 in aggregate value, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(4) The debtor's aggregate interest, not to exceed $500 in value, in jewelry held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(5) The debtor's aggregate interest in any property, not to exceed in value $400 plus up to $3,750 of any unused amount of the exemption provided under paragraph (1) of this subsection.

(6) The debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed in value $4,000 less any amount of property of the estate transferred in the manner specified in section 524(d) of this title, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

(9) Professionally prescribed health aids for the debtor or a dependent of the debtor.

(10) The debtor's right to receive—

(A) a social security benefit, unemployment compensation, or a local public assistance benefit;

(B) a veterans' benefit;

(C) a disability, illness, or unemployment benefit;

(D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. Sec. 401(a), 403(b), 408, or 409).

(11) The debtor's right to receive, or property that is traceable to—

(A) an award under a crime victim's reparation law;

(B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(D) a payment, not to exceed $7,500, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

case they do not receive the garnishment exemption, *or* the exemptions available under state law and other federal exemptions, not including those contained in Section 522(d). While Missouri debtors do not have that choice, it just does not follow that the exemptions granted to them under state law and other federal statutes are less generous on the whole for any given debtor or that such exemptions do not include the ones provided by the Missouri garnishment statute. Indeed, if as the Court believes, "other federal exemptions" include the federal garnishment statute where not superseded by state law, it would be highly anomalous for Missouri bankrupt debtors not to be able to claim a garnishment exemption by reason of their more generous garnishment statute. The Court, therefore, rejects the Trustee's fourth argument.

The Trustee has presented no meritorious arguments why a Missouri bankrupt debtor should not be able to exempt pre-bankruptcy earnings under the Missouri garnishment statute. As noted, the "opt-out" statute itself clearly implies that bankrupt and non-bankrupt debtors are to be treated alike in terms of the exemptions available to them. Since the non-bankrupt debtor is able to exempt wages under the Missouri garnishment statute, so should the bankrupt debtor be able to do so. Other courts which have considered this kind of question have reached a similar result. *See, In re Stewart,* 32 B.R. 132 (Bankr.D. Utah 1983) (Utah garnishment statute enables debtors to exempt accrued but unpaid wages at time of bankruptcy) and *In re Smith,* 23 B.R. 708 (Bankr.D.Md.1982) (Maryland garnishment statute enables bankrupt debtors to exempt accrued but unpaid wages at time of bankruptcy). The Court, therefore, will enter an Order overruling the Trustee's Objection to Debtors' exemptions.

Because of the consequences of this ruling on the administration of estates in this district, copies of this Opinion will be distributed to all panel trustees. Moreover, because those same consequences threaten to disturb the administration of cases, matters, and proceedings already closed or settled, this ruling, other than to the litigants themselves, shall apply prospectively only.

APPENDIX

Schedule B-4.—Property claimed as exempt

Debtor selects the following property as exempt pursuant to 11 U.S.C. Sec. 522(d) [or the laws of the State of <u>Missouri</u> ] and applicable federal law

| | Type of property | Location, description, and, so far as relevant to the claim of exemption, present use of property | Specify statute creating the exemption | Value claimed exempt | |
|---|---|---|---|---|---|
| 1. | Household goods, wearing apparel | (all items herein below located at residence of debtors unless otherwise indicated.) | Sec. 513.430(1) | $2,000 | |
| 2. | Jewelry | | Sec. 513.430(2) | 1,000 | |
| 3. | Monte Carlo | | Sec. 513.430(5) | 1,000 | |
| 4. | Railroad Retirement Board Benefits | U.S. Railroad Retirement Board, 844 Rush Street, Chicago, IL 60611 | 45 U.S.C. Secs. 231(m) and 352(e) | (unlimited) | |
| 5. | Unpaid wages | Burlington Northern Railroad Galesburg, IL (Stan as head of household with two children at home: Rebecca born 4-29-82 and Aaron born 9-21-84.) | Sec. 525.030 [Also 15 U.S.C. Sec. 1673 only if Sec. 525.030 does not apply] | 990 | [825] |
| | | Remainder of unpaid wages | Sec. 513.430(3) | 110 | [275] |
| 6. | Cash and deposits, including income tax refunds | See Schedule B-2/a and b | Sec. 513.440 Sec. 513.430(3) | 1,350 690 | [525] |
| 7. | Mobile home | | Sec. 513.430(6) | 1,000 | |
| | | | Total | $8,140 | |