**In re Robert Leo MAHONEY, Doris Mae Mahoney, Debtors.**

**Bankruptcy No. 89–00020–BSS.**

United States Bankruptcy Court, E.D. Missouri, E.D.

May 5, 1989.

Stuart J. Radloff, Clayton, Mo., for debtors.

Edward M. Goldenhersh, Mark H. Zoole, St. Louis, Mo., for trustee.

### MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

On January 4, 1989, Robert and Doris Mahoney (hereinafter the "Debtors") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. A. Thomas DeWoskin was the duly appointed Trustee. The Trustee has objected to an exemption claimed by the Debtors on their schedules. The Debtors claim certain royalties as exempt under Section 525.030 of the Revised Missouri Statute. The relevant facts are not in conflict and are the subject of a stipulation between the parties.

### JURISDICTION

This Court has jurisdiction over the subject matter of the proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(2)(E).

### FACTS

Sometime prior to 1985, Debtor Robert Mahoney (hereinafter "Mahoney") invented a device known as a "wrecking wheel" designed to extract outdated telephone cables from underground ducts in order to facilitate replacement by more modern fiber optic cable. In September, 1985, Mahoney and Pierre LaBarge, Jr. (hereinafter "LaBarge") formed a Missouri corporation under the name of American Fiber Optics (hereinafter "AFO") for the purpose of patenting, developing and marketing the wrecking wheel. To further that effort Mahoney granted AFO the exclusive license for the use and marketing of the wrecking wheel. This agreement was executed on September 24, 1985, and was to

extend until the longer of ten years or the expiration of the patent. In exchange, AFO paid Mahoney ten percent of all payments received by AFO for the use, sale and marketing of the wrecking wheel subject to adjustment based upon sales and other performance levels. Mahoney then assigned one half of his ten percent to LaBarge as reimbursement for expenses incurred in the formation of AFO.

The Debtors now claim that the ten percent payable to Mahoney from AFO is exempt under § 525.030 R.S.Mo. as income earned from personal services. The Trustee objects to the exemption on the grounds that such payments are not compensation for personal services and therefore evade the purview of the statute. This Court agrees with the Trustee.

## DISCUSSION

Section 525.030.2 R.S.Mo. provides, in pertinent part: [1]

> The maximum part of the aggregate earnings of any individual for any workweek, after the deduction from those *earnings* of any amounts required by law to be withheld, which is subjected to garnishment may not exceed (a) twenty-five percentum, or (b) the amount by which his aggregate earnings for that week, ..., exceed thirty times the federal minimum hourly wage ..., or, (c) if the employee is the head of a family ..., ten percentum, whichever is less ... (emphasis added).
>
> The term "earnings" as used herein means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

Thus, Missouri grants an exemption for certain earnings acquired through the exertion of personal services.

The Debtors argue that in creating the wrecking wheel Mahoney provided a personal service by expending his time and energy (both physical and mental) toward the creation of the wrecking wheel. It makes no difference, the Debtors argue, that Mahoney was not paid *while* he worked. The ten percent "royalty" represents deferred compensation for his efforts. Consequently, the Debtors conclude that Mahoney is entitled to the exemption for earnings derived from personal services.

The Trustee argues that the ten percent "royalty" represents income from the sale of a property right. That is, AFO paid Mahoney for the use of his property—his patent on the wrecking wheel.

This Court declines to be bound by the somewhat arbitrary denomination, "royalty", given the ten percent payment. Rather than ascribe rights based upon a legal interpretation of the term "royalty", the Court chooses to consider the underlying purpose of the payment. Was it for the sale or lease of Mahoney's patent? Or was it designed to compensate Mahoney for the labor he extended in creating the wrecking wheel? The Court concludes that the ten percent payment to Mahoney more closely resembles payment for the sale or use of the wrecking wheel than compensation for personal services rendered by the inventor.

From the evidence presented, this Court cannot conclude that AFO compensated Mahoney for the labor he expended in creating the wrecking wheel. Rather, the stipulation of facts specifically states that the ten percent was "subject to adjustment based upon performance levels and sales". See Stipulation, paragraph 4. Thus it would appear that the ten percent payment is more closely linked to the sale of the product than to Mahoney's efforts. Moreover, it is unlikely that Mahoney and La-Barge considered in advance what portion of the ten percent payment was to constitute compensation for personal services rendered in creating the wrecking wheel, and what portion would represent proceeds from the sale or use of the wheel. Since the Court is unable to apportion the pay-

---

1. In *In re Sanders,* 69 B.R. 569 (Bkrtcy.E.D.Mo. 1987), the Bankruptcy Court for the Eastern District of Missouri held that the exemptions granted under the Missouri garnishment statute, including § 525.030 R.S.Mo. were applicable under the Bankruptcy Code.

ment, the Court concludes from the relevant facts that the money AFO paid to Mahoney constituted payment for the sale or use of the product and not deferred compensation for the development of the product.[2]

The Debtors may argue that the Court's interpretation of § 525.030 R.S.Mo. discriminates against independent inventors, authors and artists who do not have the benefit of salary or hourly wages supporting them while they work. Instead, those people must rely on deferred compensation offered in the form of royalty payments to reimburse them for their efforts. While the Court recognizes that its interpretation of § 525.030 R.S.Mo. may not afford inventors, authors and artists the same benefits as other laborers, the Court notes that it is often impossible to apportion payments by the percentage attributed to compensation for the labor (personal service) expended in creating a product, and the percentage attributed to compensation for the sale and use of the product. Since these inventors, authors and artists only receive payment upon the sale of their product, the Court is unable to conclude that "royalty" payments constitute compensation for personal service as opposed to payment for the sale of a product.

It is unfortunate that § 525.030 R.S.Mo. was drafted in such a way as to exclude from its protection inventors, authors and artists who work independently and expend their own time and energy creating a new product, but this Court is not in a position to modify the statute. While the Court has given full consideration to the fact that exemption statutes are to be liberally construed, *Murray v. Zuke,* 408 F.2d 483, 487 (8th Cir.1969), the Court is constrained by its duty to fairly interpret the statute. It is apparent that the scope of the exemption does not embrace payment for the sale or use of property such as the money paid to Mahoney by AFO. Accordingly, it is

ORDERED that the money paid to Mahoney does not constitute earnings for per-

sonal services as is required by § 525.030 R.S.Mo. for the Debtors to receive an exemption, and the Trustee's objection is therefore SUSTAINED.

---

2. The Court does not agree with the Debtors' conclusion that by so ruling the Court has eliminated deferred compensation from the term "earnings" as used in § 525.030 R.S.Mo. See Debtors Brief at p. 2.