In re Ben P. GAINES, and Shelba Jean
Gaines, a/k/a Jeanne Gaines, d/b/a
Bed & Breakfast, Debtors.

Ben P. GAINES, and Shelba Jean
Gaines, Appellants,

v.

Danny R. NELSON, Trustee, Appellee.

Bankruptcy No. 88–5043–S–7–KMS.
Civ. Nos. 89–3453–CV–S–2,
89–3466–CV–S–2.

United States District Court,
W.D. Missouri, S.D.

Nov. 6, 1990.

Craig Smith, Daniel, Clampett, Lilley, Dalton Powell & Cunningham, Springfield, Mo., for appellants.

Danny R. Nelson, Fitzsimmons, Schroeder & Nelson, Springfield, Mo., trustee, appellee.

## ORDER

COLLINSON, Senior District Judge.

This matter is an appeal taken from orders issued by the United States Bankrupt-

cy Court for the Western District of Missouri, Southern Division, the Honorable Karen M. See presiding. The orders sustained objections of the trustee to exemptions claimed by debtors in funds held in an ERISA-established pension trust and IRAs.

This Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a). A district court may review the bankruptcy court's legal conclusions *de novo*, but the lower court's findings of fact shall not be set aside unless clearly erroneous. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987); Bankruptcy Rule 8013.

### I.

The facts generally relating to this appeal are summarized as follows:

The appellants/debtors, Ben P. and Shelba Jean Gaines, filed their joint bankruptcy petition on November 21, 1988. Among their scheduled assets was their interest in a Profit Sharing Plan and Trust for Ben P. Gaines, DDS, Inc. Amended schedules eventually filed by the debtors listed the Profit Sharing Plan and Trust as an asset that was entitled to exemption under Mo. Rev.Stat. § 513.427, § 513.430(10)(e), and 29 U.S.C. § 1056(d)(1). The appellee/Trustee filed his objections to the proposed exemption of the pension plan interests and a hearing was held by the Bankruptcy Court concerning the dispute on February 7, 1989. The Bankruptcy Court ruled that § 513.427 did not provide exemptions which were not otherwise contained in § 513.430; that the phrase "under federal law" as used in § 513.427 means the same as in 11 U.S.C. § 522(b)(2)(A), which has been interpreted to exclude ERISA statutes; and, that based on the facts, the debtors were entitled to exempt only $50,000 of the pension funds pursuant to § 513.430(10)(e).

Apparently, after the Trustee read an article in the local newspaper about a "bed and breakfast" business that the debtors were operating out of their own home, the debtors amended their schedules on June 7, 1989 to include said bed and breakfast. On July 17, 1989, the Trustee moved to reconvene a hearing on objections to debtors' exemptions in light of this revelation. The following month the Bankruptcy Court reconvened the hearing concerning the Trustee's objections and heard evidence primarily involving the reasons for the failure of the debtors to reveal the existence of the business prior to the publication of the newspaper article.

At the conclusion of the hearing, the Bankruptcy Court ruled that the debtors were not entitled to exempt any portion of the pension funds or IRAs due to what it considered to be the intentional concealment of assets and fraudulent conduct of the debtors. The Court further found that the business operated by the debtors made the pension funds and IRAs unnecessary for the debtors' support. On September 27, 1989, the Bankruptcy Court entered its "Memorandum Opinion" denying debtors' exemptions in the pension plans and IRAs. Debtors' appeal followed.

### II.

Appellants' first point on appeal is that the Bankruptcy Court was without jurisdiction to enter its "Amended Memorandum Opinion." This is a "legal" question requiring *de novo* review. The Bankruptcy Court entered its memorandum opinion on September 27, 1989. The debtors filed their Notice of Appeal on October 6, 1989. Thereafter, on November 6, 1989, the Bankruptcy Court filed an "Amended Memorandum Opinion." 106 B.R. 1008. The question is whether the Bankruptcy Court lost jurisdiction to enter any subsequent opinion once the debtors filed their Notice of Appeal on October 6, 1989.

The debtors argue that their filing of a timely Notice of Appeal divested the Bankruptcy Court of jurisdiction to amend, alter, or otherwise modify its original September 27, 1989 order.

■ The general rule is that jurisdiction over any matters involved in an appeal is immediately transferred from the lower court to the appellate court once a proper notice of appeal has been timely filed. *United States v. Thorp (In re Thorp)*, 655 F.2d 997, 998 (9th Cir.1981). This is also the rule when an appeal is taken from

bankruptcy court to district court. "Even though a bankruptcy court has wide latitude to reconsider and vacate its own prior decisions, not even a bankruptcy court may vacate or modify an order while on appeal." *Bialac v. Harsh (In re Bialac),* 694 F.2d 625, 627 (9th Cir.1982).

Appellees cite Bankruptcy Rule 9024(a) and Rule 60 Fed.R.Civ.P. as authority for the proposition that the Bankruptcy Court was timely in filing the amended opinion so long as such was filed before the appeal was *docketed* in the District Court on December 21, 1989. The Court will consider whether Bankruptcy Rule 9024(a) and Rule 60 Fed.R.Civ.P. can be reconciled with appellants' argument, and supporting caselaw, that their appeal began on the date their notice of appeal was filed.

■ The Court is of the opinion that the authorities cited by both sides can be reconciled as follows. Prior to the time a notice of appeal is filed in a pending bankruptcy, the Bankruptcy Court, as with any court of equity, may always amend its orders upon a proper showing. *See generally NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 165 n. 30, 95 S.Ct. 1504, 1523 n. 30, 44 L.Ed.2d 29 (1975). However, once the notice of appeal was filed on October 6, 1989, jurisdiction over any matters involved in the appeal was transferred from the Bankruptcy Court to the District Court. "Appellants filed their notice of appeal on April 30, 1980. This step transferred jurisdiction over any matters involved in the appeal from the district court to this court." *Petrol Stops Northwest v. Continental Oil Co.,* 647 F.2d 1005, 1010 (9th Cir.1981). From the date of the filing of the notice of appeal (October 6, 1989) up to the date the appeal was docketed in District Court (December 21, 1989), the only changes the Bankruptcy Court could have made to the original order were the type of "clerical mistakes" contemplated by Rule 60(a) Fed. R.Civ.P. Such statute provides as follows:

(a) **Clerical Mistakes.** Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. *During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court,* and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

Rule 60(a) Fed.R.Civ.P. (emphasis added).

Therefore, in the instant case, the only changes the Bankruptcy Court could have made in its order between October 6, 1989, and December 21, 1989, would be to correct the type of clerical mistakes contemplated by Rule 60(a). Of course, after December 21, 1989, even corrections of that type could only be made with leave of the Court. It should be noted that at no time was said leave of the District Court requested.

■ Thus, the issue becomes whether the type of changes made by the Bankruptcy Court to the original opinion is covered by Rule 60(a). "A clerical error is generally defined as an error made by a clerk in transcribing or otherwise ..." *Krigel v. Drake (In re National Marine Sales and Leasing, Inc.),* 79 B.R. 442, 461 (Bankr.W. D.Mo.1987) (*quoting, West Virginia Oil & Gas Co. v. George E. Breece Lbr. Co.,* 213 F.2d 702, 705 (5th Cir.1954). On the other hand, "a mistake ... of substance ... should not be corrected without a substantial showing." *Id.* This Court does not believe that the changes made by the Bankruptcy Court to the original September 27, 1989 opinion fit the description of "clerical mistake" set out above.

In the original order, the Bankruptcy Court ruled that the debtors were not entitled to exempt any portion of their pension funds or IRAs for two independent reasons: (a) the Bankruptcy Court found that the debtors intentionally concealed the existence and operation of a family business, and (b) the debtors did not demonstrate any statutory basis to allow the exemption.

In the "Amended Memorandum Opinion" entered on November 6, 1989, the Bankruptcy Court added a third reason for denying the exemption, *i.e.,* that the funds in debtors' pension plan and IRAs were not reasonably necessary for the support of the

debtors. The Court believes this constituted a substantive change to the order, not the correction of a "clerical mistake" or an "oversight" as contemplated by Rule 60(a). The Court thus regards the "Amended Memorandum Opinion" of November 6, 1989, reported at 106 B.R. 1008, to be void and without effect and said "Amended Memorandum Opinion" is hereby quashed.

### III.

Appellants' second point on appeal is that the Bankruptcy Court erred in holding that Mo.Rev.Stat. § 513.427 could not be used to exempt the subject property in bankruptcy. This is also a legal question requiring *de novo* review.

As this Court has written before:

Property of a debtor generally may only be kept beyond the reach of the trustee in one of two ways: either by being "excluded" or "exempted." The difference is not simply one of semantics, at least not in this particular case. Property that is "excluded" never comes into the bankruptcy estate in the first place. Very little property is actually excluded from the estate. In fact, the Code provides that, except for the interests described in Section 541(b) and Section 541(c)(2), "all legal or equitable interests of the debtor in property as of the commencement of the case" comprise the bankruptcy estate. 11 U.S.C. § 541(a)(1).

On the other hand, "exempted" property is originally included in the estate, then is "exempted out" by specific provision of the Code (or other federal law) or by certain state exemptions.

*Wear v. O'Brien (In re O'Brien)*, 94 B.R. 583, 585 (W.D.Mo.1988). *See also Samore v. Graham (In re Graham)*, 726 F.2d 1268, 1271 (8th Cir.1984).

With regard to whether ERISA plan benefits are excluded from the bankruptcy estate, it would seem that *Graham* speaks clearly to that issue:

There is no indication whatever that Congress intended § 541(c)(2) to be a broad exclusion which would apply to keep all debtors' entire ERISA plan benefits out of the estate. To the contrary, pension benefits are specifically treated under the Code's *exemption* provision, clearly indicating that they were intended and assumed to be part of the estate.

*Graham*, 726 F.2d at 1272 (emphasis in original).

Since ERISA does not provide an *exclusion*, the Court must consider whether the interest is *exempted* pursuant to § 522(b) of the Bankruptcy Code.[1] When the Code was drafted, each state was allowed a choice of what set of exemptions would be available to residents of that state. A state could choose either section 522(b)(1), which gives debtors the exemptions listed in section 522(d), or it could "opt out" and choose section 522(b)(2). In the latter case, only property exempt under state law or "other Federal law" would be exempt.

Missouri is one of the states which has "opted out". Mo.Rev.Stat. § 513.427. Therefore, the Court must consider whether ERISA plan benefits constitute "property that is exempt under Federal law, other than [§ 522(d) ], or State or local law that is applicable ..." Section 522(b)(2)(A).

---

1. 11 U.S.C. § 522(b) reads, in pertinent part, as follows:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

### A. Is ERISA "other federal law?"

■ First, the question of whether ERISA itself is another "Federal law" under § 522(b)(2)(A) will be considered. There is very little legislative history regarding § 522 that offers guidance on this issue. The House report, however, listed "some of the items that may be exempted under other Federal laws" under section 522(b)(2)(A):

> Foreign Service Retirement and Disability payments;
>
> Social security payments;
>
> Injury or death compensation payments from war risk hazards;
>
> Wages of fisherman, seamen, and apprentices;
>
> Civil service retirement benefits;
>
> Longshoremen's and Harbor Workers' Compensation Act death and disability benefits;
>
> Railroad Retirement Act annuities and pensions;
>
> Veterans benefits;
>
> Special pensions paid to winners of the Congressional Medal of Honor; and
>
> Federal homestead lands on debts contracted before issuance of the patent.[2]

When the Eighth Circuit considered the matter in *In re Graham*, the *Graham* Court acknowledged that the list contained in the report was not meant to be exclusive but nevertheless found the absence of ERISA to be significant. "[W]e find the failure of Congress to include ERISA plan benefits probative of Congressional intent that ERISA was not a 'Federal law' upon which a § 522(b)(2)(A) exemption could be based." *In re Graham*, 726 F.2d at 1274. Not only is *Graham* still good law in this circuit, it is in accord with the action taken

by other Circuit Courts of Appeals that have considered the same issue.[3,4]

### B. Exempt pursuant to state exemption statute?

■ The Court next considers the matter of a Missouri state exemption applying to the benefits in question.

Missouri's opt out statute is found at Mo.Rev.Stat. § 513.427 and describes in general terms what a Missouri debtor may exempt in bankruptcy. It reads as follows:

> Every person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the state of Missouri or under federal law, other than Title 11, United States Code, Section 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, Section 522(d).

Mo.Rev.Stat. § 513.427.

In other words, a Missouri debtor may exempt from the bankruptcy estate property that is *exempt from attachment and execution* under either state or *federal* law. The debtors argue that "Missouri's exemption scheme is a unique state system in that it provides a distinct class of exempt property based on the property's *status* as exempt from execution and attachment."

A plain reading of Mo.Rev.Stat. § 513.427, together with an examination of other Missouri bankruptcy cases interpreting § 513.427's provisions, would seem to support debtors' argument. In the case of *In re Sanders*, 69 B.R. 569 (Bankr.E.D.Mo. 1987) it was found that the state's exemp-

---

**2.** H.R.Rep. No. 595, 95th Cong., 1st Sess. 360 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6316 (citations omitted).

**3.** *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488 (11th Cir.1985); *Goff v. Taylor (In re Goff)*, 706 F.2d 574 (5th Cir. 1983).

**4.** Because of the weight of precedent on this point, appellants did not attempt to argue that

ERISA was "other federal law" within the meaning of § 522(b)(2)(A) of the Code. However, at least one commentator has suggested that language in the Supreme Court's recent decision in *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, — U.S. —, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) may indicate that the Court might now consider ERISA to be such a "federal law." *See* Westbrook, *Retirement Plan Assets in an Arkansas Bankruptcy*, 43 Ark.L.Rev. 253, 270–74 (1990).

tion scheme enabled a debtor to exempt certain pre-bankruptcy earnings by way of the Missouri garnishment statute, Mo.Rev. Stat. § 525.030. Since pre-bankruptcy wages are exempt from garnishment *outside* of bankruptcy under § 525.030, they are exempt *in* bankruptcy by § 513.427.

Similarly, in the case of *In re Mitchell*, 73 B.R. 93 (Bankr.E.D.Mo.1987), after that court established that unliquidated personal injury claims are exempt from execution and attachment in Missouri by Missouri common law, the court concluded that those claims were made exempt in bankruptcy by Mo.Rev.Stat. § 513.427. Both cases illustrate the principle that if property of a Missouri debtor is exempt from attachment and execution then it is made exempt in bankruptcy by § 513.427. Furthermore, both courts agreed that "the 'opt-out' statute itself clearly implies that bankrupt and non-bankrupt debtors are to be treated alike in terms of the exemptions available to them." *Mitchell*, 73 B.R. at 95 (quoting *Sanders*, 69 B.R. at 576).

In the instant case, debtors argue that the plain language of § 513.427 requires that property "exempt from attachment and execution ... under federal law" is likewise made exempt in bankruptcy by the *state* statute. They argue that because ERISA pension benefits are exempt under federal law from execution and attachment by Section 206(d) of ERISA[5] and case law, ERISA pension benefits are exempt in full in bankruptcy in Missouri as a matter of law.

Certainly the anti-alienation provision of ERISA is an extremely strong one, as was recently shown in the case of *Guidry v. Sheet Metal Workers National Pension Fund*, —— U.S. ——, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).[6]

It would seem that the same plain reading of the statute given § 513.427 by the *Sanders* and *Mitchell* courts results in

ERISA funds being covered by the state exemption statute. In other words, 1) Missouri has opted-out and has chosen to allow as exempt in bankruptcy "any property that is exempt from attachment and execution under ... Missouri or ... federal law"; 2) ERISA benefits are made exempt from attachment and execution by Section 206(d) of ERISA; so therefore, 3) ERISA pension benefits are exempt in bankruptcy in Missouri.

The debtors take great pains to point out to the Court that they are *not* arguing that ERISA benefits are "exempt under Federal law" within the meaning of 11 U.S.C. § 522(b)(2)(A). Rather, they argue that the benefits are exempted under a *state* law (as allowed by § 522(b)(2)(A)) which establishes/defines a class of property *exempt in bankruptcy* by virtue of its status as property *exempt from execution and attachment.*

Essentially, the position taken by the Bankruptcy Court, as well as the Trustee, is that the distinction set out by the debtors is one without any meaning. This Court, however, disagrees. The former argument, as stated above, has been made moot by *Graham*, supra, and *Goff*, supra. It should fare no better in Arkansas, Texas, etc. The latter argument, however, is one uniquely tailored to Missouri's *state* bankruptcy exemption statute. In the first case, ERISA has been held not to be a law that exempts property under the "federal" clause of § 522(b)(2)(A). However, in the second case, there can be little question that ERISA *is* a law which makes property "exempt from attachment and execution." Accordingly, it would be made exempt by the "state" clause of § 522(b)(2)(A).

This Court holds that the debtors' interest in their ERISA pension plans are exempt under Missouri's state exemption statute (§ 513.427) *if the statute has not been preempted by ERISA.* A discussion

---

**5.** ERISA Section 206(d)(1), 29 U.S.C. § 1056(d)(1) states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

**6.** In *Guidry*, the chief executive officer of the union pleaded guilty to embezzling from the

union, resulting in the union refusing to pay his pension benefits to him. He sued to have his benefits paid him with the Supreme Court eventually ruling in his favor. Thus, even in this extreme situation, the strength of ERISA's anti-alienation provision prevailed.

of whether such preemption has occurred follows.

### C. § 513.427 preempted by ERISA

The Bankruptcy Court below held that Mo.Rev.Stat. § 513.427 as used by debtors to exempt ERISA pension plan funds in bankruptcy is preempted by ERISA "and is invalid to the extent that it is dependent upon and connected with ERISA." Its ruling was based on the preemption provision of ERISA which is found at ERISA § 514(a), 29 U.S.C. § 1144(a) and provides in pertinent part that:

> the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

The preemption provision and its effect on state law was recently taken up by the Supreme Court in *Mackey v. Lanier*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

In *Mackey*, the Supreme Court held that a Georgia statute protecting an ERISA welfare plan from garnishment was preempted and therefore invalid. This conclusion was reached even though the Georgia law arguably would have furthered the intent of Congress when it passed ERISA. "Legislative 'good intentions' do not save a state law within the broad pre-emptive scope of § 514(a)." *Mackey*, 486 U.S. at 830, 108 S.Ct. at 2185. In the same case, the Supreme Court held that ERISA did not forbid garnishment of an ERISA welfare benefit plan in finding that Georgia's general garnishment statute was not preempted by § 514(a).

The Georgia statute deemed preempted in *Mackey* was doomed first and foremost because it expressly made reference to ERISA. The Court in *Mackey* reaffirmed its previously stated rule that "state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a)." *Mackey*, 486 U.S. at 829, 108 S.Ct. at 2185. "*[A]ny* state law which singles out ERISA plans, by express reference, for special treatment is pre-

empted." *Mackey*, 486 U.S. at 838 n. 12, 108 S.Ct. at 2189 n. 12. (emphasis in original).

The case at bar does not involve a state statute which makes express reference to ERISA. However, "as we have recognized, the pre-emptive force of § 514(a) is not limited to such state laws. See, *e.g.*, *Pilot Life Ins. Co. v. Dedeaux* [481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) ], [citation omitted] and *Shaw v. Delta Air Lines, Inc.* [citation omitted]. Consequently, we must decide whether § 514(a) pre-empts [the state law] because it 'relates to' ... ERISA ..." *Mackey*, 486 U.S. at 831, 108 S.Ct. at 2186. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). "[W]e have virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are preempted under § 514(a)." *Mackey*, 486 U.S. at 829, 108 S.Ct. at 2185.

Does Mo.Rev.Stat. § 513.427 "have a connection" with ERISA benefit plans? Is the statute "designed to affect employee benefit plans?" This Court feels constrained to answer "yes" to both questions and accordingly declares § 513.427 to be preempted insofar as it is used to exempt ERISA pension benefit plans in bankruptcy.

Only limited guidance on the preemption question is available from examining previous Supreme Court cases dealing with ERISA. First of all, the number of cases directly addressing ERISA preemption may be counted on two hands. Furthermore, none of those dealt with how ERISA's preemption statute might affect bankruptcy exemptions. Nevertheless, a few conclusions may be drawn.

One is that the Supreme Court gave the preemption provision broad meaning in the 1983 *Shaw* decision and has not backed-off that position since then. The *Shaw* court noted the pains Congress took to preempt the field with regard to ERISA in order to protect participants by eliminating the

threat of conflicting and inconsistent state and local regulation. The Court said that the "breadth of § 514(a)'s pre-emptive reach is apparent from that section's language" and that courts "must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning." 463 U.S. at 96, 97, 103 S.Ct. at 2899, 2900. The Court found nothing to indicate a more restrictive meaning was intended. Instead, it wrote that "Congress used the words 'relate to' in § 514(a) in their broad sense," *Id.*, at 98, 103 S.Ct. at 2900, concluding that even laws *not* specifically designed to affect employee benefit plans were to be preempted. "To interpret § 514(a) to pre-empt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514." *Id.*

Even laws described as "indirect state action" have been held preempted by the Court:

> The pre-emption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements. [*Shaw*, 463 U.S. at 98–99, 103 S.Ct. at 2900–01]. "[E]ven indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981).
>
> Though [the statute] is not denominated a benefit-plan law, *it bears indirectly but substantially on all insured benefit plans* ...

*Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (emphasis added).

In fact, all but one of the recent cases considered by the Supreme Court on this subject (other than *Mackey*) have resulted in all or part of the disputed state laws being held preempted. The lone exception is *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In *Fort Halifax* a Maine statute was held not to be preempted by

ERISA because the law had to do with employee benefits, rather than employee benefit *plans*. However, the Court did nothing to change the broad scope of its "relates to" analysis established in *Shaw*.

Given the fact that the Missouri exemption statute indirectly involves ERISA benefit plans, since it refers to property exempt from attachment and execution under federal law, it would seem that the only way the law is not preempted is if the State's action "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Thus, the Court implied such was possible. But read on: "The present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line." *Id.*

The "too tenuous" exception found in *Shaw* is only found in a short footnote and is mere *dicta* to boot. Nevertheless, it is a tempting one given the fact that the chief purpose of having a strong preemption provision in ERISA was to eliminate "the threat of conflicting or inconsistent State and local regulation of employee benefit plans," *Fort Halifax*, 482 U.S. at 9, 107 S.Ct. at 2216, and it is difficult to see how allowing a Missouri debtor in bankruptcy to exempt such plan benefits would conflict with that purpose. "If a State creates no prospect of conflict with a federal statute, there is no warrant for disabling it from attempting to address [local concerns]." *Id.* at 19, 107 S.Ct. at 2221.

Nevertheless, the Court believes that in the instant case the "too tenuous" exception cannot apply. The Missouri statute defines property that may be exempted in bankruptcy by its status, i.e., whether it is exempt from "attachment and execution." Debtors are correct when they point out that the provisions of 29 U.S.C. § 1056(d) only require inclusion of anti-alienation provisions in plans in order to qualify under ERISA and that there is no protection from attachment and execution provided expressly by § 1056(d). However, they are also correct when they point out that case

law has held that such plans *are* exempt from attachment and execution. This connection between the Missouri statute and § 1056(d) may be an indirect one but it is inescapable that it exists. Moreover, "it bears indirectly but substantially on all insured benefit plans" in Missouri. *Metropolitan Life Ins.*, 471 U.S. at 739, 105 S.Ct. at 2389. Given what guidance is available from applicable caselaw, and after having given due consideration to same, it is this Court's finding that the relationship is not so tenuous as to avoid preemption of the Missouri statute.

D. *"Federalization" of state exemption law*

Finally, there is appellants' alternative argument that "because the Missouri exemption scheme is established for bankruptcy under the auspices of power granted by Congress and is utilized in conjunction with Title 11, Missouri's exemptions are incorporated into and entitled to the same treatment as the Bankruptcy Code, and are not subject to ERISA preemption." *Appellants' Brief* at 28. In other words, "because Mo.Rev.Stat. § 513.427 is devoid of meaning absent its relationship to the provisions of Title 11, Mo.Rev.Stat. § 513.427 is the practical equivalent to federal legislation." *Id.* at 29. Appellants offer no authority in support of this theory and the Court knows of none. On the other hand, other courts have rejected similar arguments. *Penick v. Hirsch (In re Hirsh)*, 98 B.R. 1 (Bankr.D.Ariz.1988); *In re Siegel*, 105 B.R. 556 (D.Ariz.1989). This argument is rejected.

## IV.

Appellants' third point on appeal is that the Bankruptcy Court erred when it struck debtor's exemptions of ERISA pension benefits and IRAs for concealing a business asset because "since debtors were entitled

to exempt the pension funds entirely under Mo.Rev.Stat. § 513.427, any alleged concealment was not material to the exemption claimed for the pension funds, and deprived no creditor ·or the estate of any asset of value." *Appellants' Brief* at 31.

First of all, this Court has already decided that the debtors are *not* "entitled to exempt the pension funds entirely under Mo.Rev.Stat. § 513.427." Furthermore, this Court finds that Mo.Rev.Stat. § 513.430(10)(e) [7] "relates to" ERISA and is accordingly preempted to the extent it might be used to exempt ERISA funds in bankruptcy. This Section is much more closely related to ERISA than § 513.427 is in that it makes specific reference to ERISA tax provisions, and allows an exemption for pension plan funds "to the extent reasonably necessary for the support of such person and any dependent of such person...." This alone is enough to cause the statute to be preempted. Moreover, even if one were to find the statute to be otherwise valid, since § 513.430(10)(e) allows a bankruptcy court to determine that less than the full amount of a debtor's pension plan funds are exempt in bankruptcy, the statute conflicts with the anti-alienation provisions of ERISA.

As the appellants wrote in their own reply brief, "[i]f § 513.430(10)(e) is preempted, Debtors submit that any determination of an amount 'reasonably necessary' for their support under that statute is entirely superfluous and irrelevant...." *Reply Brief of Appellants* at 10. Therefore, the question of whether the alleged concealment of the bed and breakfast was something that should have been properly considered justification for denying exempt status to the ERISA pension benefits and IRAs is rendered moot.

---

7. "The following property shall be exempt from attachment and execution to the extent of any person's interest therein:

\* \* \* \* \* \*

(10) such person's right to receive: ...

(e) A payment under a stock bonus, pension, profit-sharing, annuity or similar plan or contract on account of illness, disability, death, age

or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person unless:

\* \* \* \* \* \*

c. Such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409."

### V.

Furthermore, since the Bankruptcy Court's findings relating to the concealment issue are the basis of points 4 and 5 on appeal, those issues are likewise rendered moot by this Court's holding that Mo.Rev.Stat. § 513.430(10)(e) has been preempted.

### VI.

Accordingly, it is hereby

ORDERED that the Bankruptcy Court's "Amended Memorandum Opinion" of November 6, 1989 is hereby quashed. It is further

ORDERED that Mo.Rev.Stat. § 513.427 and Mo.Rev.Stat. § 513.430(10)(e) are preempted by ERISA for the reasons set out above. It is further

ORDERED that appellants' remaining arguments are either rejected or deemed moot for the reasons set out in the body of this order. It is further

ORDERED that this matter is remanded to the Bankruptcy Court for action consistent with this opinion.