**In re Lester Francias PRITCHARD, Debtor.**

**Bankruptcy No. 6-87-57.**

United States Bankruptcy Court, D. Minnesota.

July 13, 1987.

Robert L. Russell, Fergus Falls, Minn., S. Gail Busch (on the brief), St. Paul, Minn., for debtor.

Michael Farrell, pro se.

**ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION**

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the undersigned United States Bankruptcy

Judge on May 14, 1987, upon the Trustee's objection to Debtor's claim of exemption in certain federal farm program entitlements. Chapter 7 Trustee Michael J. Farrell appeared *pro se.* Debtor appeared personally and by his attorney, Robert L. Russell (S. Gail Busch on the brief). Upon the objection and responsive documents, arguments of counsel, and the other files and records in this case, the Court makes the following Order.

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court on February 3, 1987. On his B–2 Schedule, he included an entry for "1986 Deficiency Payment, payable from ASCS, in the value of $1,000.90." [1] On his amended Schedule B–4, filed on April 6, 1987, he claimed the deficiency payment as exempt, citing 16 U.S.C. § 590h(g) as the statute creating the exemption claimed.[2] Debtor has otherwise claimed the Minnesota state exemptions for his homestead and personal property. The Trustee has timely objected to Debtor's claim of exemption in the 1986 deficiency payment, arguing that the statute cited does not create a true exemption cognizable in bankruptcy and that Minnesota state law does not provide an exemption for an asset of this character. Debtor argues that 11 U.S.C. § 522(b)(2) authorizes him to claim both the Minnesota state exemptions and exemptions under federal law other than those contained in the so-called "federal bankruptcy exemptions" enumerated in 11 U.S.C. § 522(d). He further argues that the limitation in 7 U.S.C. § 1444e(k) and 16 U.S.C. § 590h(g) on assignability of deficiency payments, com-

bined with the overlay of the sovereign immunity of the United States from liability in suits for garnishment, make the cited statutory provision an "other federal law" exemption allowable under 11 U.S.C. § 522(b)(2)(A), the equivalent of one of the examples of such non-Bankruptcy Code federal statutory exemptions cited in the legislative history. *See* H.R. REP. No. 595, 95th Cong. 1st Sess. 360 (1977); S. REP. No. 989, 95th Cong. 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Debtor's argument is ingenious, but unavailing.

Under 11 U.S.C. § 522(b)(2), Debtor may of course elect to use the Minnesota State exemptions and additionally may use exemptions available under any federal statute outside of Title 11 to exempt property protected under such non-Bankruptcy Code federal exemptions.[3] The question posed here is whether the language from Titles 7 and 16 invoked by Debtor is actually a non-Bankruptcy Code federal exemption statute. In the debtor-creditor context, the term "exemption" as been variously defined as:

> A privilege allowed by law to a judgment debtor, by which he may hold property to a certain amount for certain classes of property, free from all liability to levy and sale on execution or attachment.

BLACK'S LAW DICTIONARY at 513 (5th Ed.1979);

> The freedom of property of debtors from liability to seizure and sale under legal

1. The asset described is apparently a payment due under one of the Department of Agriculture deficiency and set-aside programs created under 7 U.S.C. § 1444e.

2. The statute provides in pertinent part as follows:

> A payment which may be made to a farmer under this section, may be assigned, without discount, by him in writing as security for cash or advances to finance making a crop, handling or marketing an agricultural commodity, or performing a conservation practice.... Such assignment shall not be made to pay or secure any preexisting indebtedness. This provision shall not authorize any suit against or impose any liability upon the Sec-

retary or any disbursing agent if payment to the farmer is made without regard to the existence of any such assignment....

The non-assignability provision is applicable to entitlements under the deficiency and set-aside programs. 7 U.S.C. § 1444e(k).

3. The applicable language from § 522(b)(2) is as follows:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate ...

> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition ...

process for the payment of their debts
...

35 C.J.S. *Exemptions* § 1 at 6 (1960);

... a right given by law to a debtor to retain a portion of his personal property free from seizure and sale by his creditors under judicial process.

31 AM.JUR.2d *Exemptions* § 2 at 329 (1967).

It is noteworthy that

[e]xemptions are solely creations of constitution or statute and, as the product of legislative bodies, and are in derogation of the general common law rule that all of a debtor's property is the common pledge of his creditors and may be subjected to the payment of debts if it can be reached in an appropriate proceeding.

35 C.J.S *Exemptions* § 1 at 7–8 (1960), and cases cited therein. The central and common characteristic of exemption statutes is the shelter they afford from claims of otherwise-unsecured judgment creditors acting under collection process. Because exemptions have no legal existence independent of statute, it perforce follows that one must look to a particular statute's language to see whether it contains the provisions that make it an exemption statute.

▅▅▅ The provision of 16 U.S.C. § 590h(g) upon which Debtor relies simply does not contain language protecting Debtor's personal entitlement by shielding the federal agricultural-program payment in question from garnishment, attachment or levy while in the hands of United States Treasury or any of its agents, or even after disbursement to a farmer-beneficiary. To be sure, the anti-assignment provision in the statute limits the extent to which the entitlement to payment may be reached by, or encumbered in favor of, a creditor, by prohibiting assignment to secure pre-existing debt and limiting assignment to new financing for crop inputs, handling, and marketing, or for resource conservation activity. However, anti-assignment provisions only operate to restrict, prohibit, or invalidate consensual assignments by a debtor-beneficiary; they do not prohibit involuntary attachment by collection process. Thus, the mere fact that 16 U.S.C. § 590h(g) contains an anti-assignment provision does not in itself make it an exemption statute, even though all of the other statutes cited as examples by Congress in the legislative history contain anti-assignment provisions. Every single statute cited as an example of a non-Bankruptcy Code federal statutory exemption contains language which specifically prohibits the seizure of the assets in question under collection process.[4] This is what makes them exemption statutes. The fact that they also contain anti-assignment provisions is a mere fortuity.

---

**4.** *See:* 22 U.S.C. § 1104 ("None of [the entitlements to Foreign Service retirement and disability pensions] ... shall be ... subject to execution, levy, attachment, garnishment, or other legal process, except as provided in section 1004(c) of this title."); 42 U.S.C. § 407 (Social Security benefits shall not "... be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."); 42 U.S.C. § 1717 (War Hazards compensation payments shall not "... be subject to execution, levy, attachment, garnishment, or other legal process or to the operation of any bankruptcy or insolvency law."); 46 U.S.C. § 601 ("No wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court ..."); 5 U.S.C. § 8346 [mis-cited in legislative history as "5 U.S.C. §§ 729, 2265"] (Entitlement to federal Civil Service Retirement benefits "... is not ... subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws."); 33 U.S.C. § 916 (Longshoremen's and Harbor Workers' Compensation Act death and disability benefits "... shall be exempt from all claims of creditors and from levy, execution, and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived."); 45 U.S.C. § 352(e) [misidentified in legislative history as involving veteran's benefits] ( ... "no [railroad unemployment compensation] benefits shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated."); 38 U.S.C. § 3101 (right to receive veteran's benefits "... shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."); 43 U.S.C. § 175 ("No lands acquired under the provisions of the [federal] homestead laws and laws supplemental and amendatory thereof shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor.").

The fact that Debtor's entitlement to a set-aside program payment may not be subject to attachment while in possession of the United States Treasury or one of its agents does not make it exempt in bankruptcy, either alone or in conjunction with an anti-assignment provision. It must be acknowledged that, under the doctrine of sovereign immunity, the United States is not subject to suit as a third-party garnishee or bailee in attachment or garnishment proceedings in the absence of a statutory waiver of that immunity. *Applegate v. Applegate,* 39 F.Supp. 887, 889–90 (E.D. Va.1941).[5] However, the issue of whether the United States may be compelled in a legal proceeding to withhold payment from a beneficiary of its largess and to account for the sums withheld to a judgment creditor—and be subjected to actual or potential liability in doing so—is completely distinct from the issue of whether the judgment debtor-beneficiary has a personal right to retain those funds free of the claims of creditors. *Applegate,* 39 F.Supp. at 890 ("This is not a question of any right of personal exemption on the part of the defendant ... but of the sovereign immunity of the United States from suits to which it has not consented."). While the sovereign immunity doctrine and the policy underlying exemption statutes may have the common and coincidental effect of preventing attachment under collection process, they spring from two entirely different policies and sources of law. A judgment debtor simply may not invoke sovereign immunity on his own behalf. In the context of a garnishment proceeding the doctrine does not obtain for the benefit and protection of the beneficiary of a government payment, but rather for the protection of the government from the burden of administering responses to collection process for the sole benefit of private parties, from potential liability in connection with the process (whether for alleged wrongful response, for failure to respond, or simply because response is at least in a general sense a drain on the Treasury) and for other public considerations not at all germane to the private debtor-creditor relationship.[6]

Simply stated, 7 U.S.C. § 1444e(k) and 16 U.S.C. § 590h(g) are not exemption statutes; while they may have the effect of protecting a farmer-beneficiary from ultimate loss of an intended benefit on certain occasions by prohibiting the attachment of a lien securing pre-existing indebtedness, their protections extend no further than that. Debtor's attempt to engraft a shield from involuntary process onto the statute by reference to sovereign immunity, while clever, simply is not appropriate.

IT IS THEREFORE ORDERED:

1. That the Trustee's objection to Debtor's claim of exemption in a "1986 Deficiency Payment, payable from ASCS," of a value of $1,000.90, is sustained;

2. That the entitlement described in Term 1 of this Order is property of Debtor's bankruptcy estate and shall be subject to the Trustee's administration in this case.

5. Where, however, the United States has waived sovereign immunity as to a particular agency or instrumentality the waiver is liberally construed, *F.H.A. v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940), and garnishment and execution proceedings rightly fall within the waiver, *Id.* at 245–46 and 250, 60 S.Ct. at 490–92. The liberality with which courts have construed the waiver of sovereign immunity in garnishment proceedings has increased in recent years. *See Iowa-Des Moines Nat'l Bank v. United States,* 414 F.Supp. 1393 (S.D.Ia.1976). In view of the Court's conclusion that any possible bar to garnishment of Debtor's entitlement on sovereign immunity grounds is irrelevant, it need not reach the statutory questions of whether the United States has waived sovereign immunity for the agricultural programs involved here by giving the Secretary of Agriculture—or the county ASCS committees administering the set-aside programs—the right "to sue and be sued."

6. As to the latter proposition, *see Arnold v. United States,* 331 F.Supp. 42, 43 (S.D.Tex.1971).