STATE ex rel., Jeremiah W. NIXON, Missouri Air Conservation Comm'n, and Missouri Department of Natural Resources, Respondents,

v.

Elvin BOONE, d/b/a Inter City Metals, Appellant.

No. WD 52000.

Missouri Court of Appeals, Western District.

July 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1996.

Sharlie Pender, Independence, for appellant.

Douglas E. Nelson, Assistant Attorney General, Jefferson City, for respondents.

Before ULRICH, C.J., P.J., and FENNER and BRECKENRIDGE, JJ.

FENNER, Judge.

This matter comes before us after the Circuit Court of Jackson County granted a motion for summary judgment in favor of the Missouri Air Conservation Commission ("MACC"), and Missouri Department of Natural Resources ("MDNR"), and denied the competing motion for summary judgment of appellant Elvin Boone, d/b/a Inter City Metals ("ICM"). The questions presented by the motions and on appeal are whether respondents had standing to bring their action in the circuit court without a prior administrative proceeding and whether respondents had authority to require the air quality testing it ordered appellant to perform.

When considering the appeal of the granting of a summary judgment motion, the Court will review the record in the light most favorable to the party against whom judgment is sought. *State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App.1993). The parties agree that there is no factual dispute presented by this case; the question before us is whether the trial court correctly applied the law to the following facts.

Appellant ICM operates an aluminum smelting operation in Kansas City, Jackson County, Missouri. ICM's facility is an air contaminant source that has been the subject of numerous inspections and notices of violations throughout the history of its operation.

On March 9, 1992, the Director of the MDNR, pursuant to Chapter 643, RSMo 1991 Supp.,[1] and 10 CSR 10–6.180, issued an order directing ICM to conduct air emissions tests for particulate matter and opacity on the emissions from the aluminum smelter. Methods and protocol for these tests were to be submitted to the MDNR for approval. ICM was served with this order on June 4, 1992, and has failed to perform the tests set forth in the order.

MDNR had provided notice of violations to ICM as a result of inspections in September 1990, January 1991, and February 1991. Consequently, at its January and February 1991 meetings, MACC granted authority to refer ICM's noncompliance with its orders to the Attorney General's office if settlement was not reached. No settlement was reached and the matter was referred to the Attorney General on March 26, 1992. ICM's refusal to comply with the June 1992 test order, coupled with its earlier violations, resulted in suit being filed in Jackson County on October 22, 1992. The suit sought a temporary injunction, permanent injunction, and civil penalties pursuant to Chapter 643, the Missouri Air Conservation Law.

ICM moved to dismiss the petition alleging that the MACC failed to comply with the procedural requirements of Chapter 643, de-

---

1. All statutory references are to the Missouri Revised Statutes, 1991 Supplement, unless other- wise indicated.

nying jurisdiction to the Jackson County Circuit Court. The circuit court denied ICM's motion on April 27, 1993. A petition for preliminary writ of prohibition to this court was denied.

On July 12 and 15, 1993, ICM had a testing company attempt to perform an opacity test at its facility. ICM did not comply with the June 1992 test order when it attempted to have these tests performed because it did not meet with and obtain the approval of the MDNR prior to implementing the tests.

The MDNR–Hazardous Waste Program performed another inspection of the ICM facility on September 2, 1992. Based on the noncompliance discovered during this visit and the failure of the parties to resolve the hazardous waste issues, the state filed a second amended petition asserting the hazardous waste claims on March 15, 1994.

In July 1994, the parties entered into a consent judgment resolving Counts I and V of the second amended petition regarding the installation and operation of a refuse incinerator without a permit and the hazardous waste claims, respectively. The parties also entered into a stipulation to resolve Counts II, III, and IV. Respondents agreed they would not proceed on Counts II and III, while the parties would submit Count IV, which claimed appellant's failure to comply with the emissions test order, to the court on cross-motions for summary judgment.

The circuit court granted the respondents' motion for summary judgment on March 14, 1995, finding that the MDNR had authority to require ICM to conduct particulate matter/emissions and opacity tests without proving existing pollution and that the method of testing ordered by MDNR was reasonable in order to measure the particulate and opacity emissions and in "accordance with good professional science" as required by 10 CSR 10–6.180. ICM was ordered to perform the emission testing within 180 days. No testing has been performed.

Appellant filed a notice of appeal on June 21, 1995. This court dismissed the appeal on October 16, 1995, because the case was neither final nor otherwise appealable. Respondent then moved to dismiss the remaining counts of its petition without prejudice. ICM filed a motion for reconsideration that was overruled by the court on November 21, 1995. ICM timely filed its notice of this appeal on November 30, 1995.

## I. STANDARD OF REVIEW

■ The Missouri Supreme Court provided an exhaustive analysis of summary judgment practice and review in its opinion in *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). Appellate review of summary judgments is essentially *de novo. Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different than those which the trial court should have employed initially. *Id.* As the trial court's initial judgment is founded on the record submitted and the law, there is no need for the appellate court to defer to the trial court's granting of the summary judgment motion. *Id.* Though both parties acknowledge that there is no factual dispute presented by this case, the key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question. *Id.* at 380.

## II. CIRCUIT COURT JURISDICTION

■ It is appellant's initial contention that the state is precluded from charging a violation of Chapter 643 unless and until the MACC makes a finding of a violation after adjudicatory administrative hearings, therefore, the trial court erred and abused its discretion in failing to dismiss respondent's petition because of a lack of standing depriving the circuit court of jurisdiction. Appellant's argument ignores key provisions in the statute and the overall purpose of the Missouri Air Conservation Law.

■ Appellant bases his argument on the provisions of section 643.080 which, in pertinent part, provide the following:

1. The director[2] shall investigate alleged violations ... and may cause to be made such other investigations as he shall deem advisable. The department[3] shall assume the costs of investigation of alleged violations. . . .

. . .

3. If, in the opinion of the director, the investigation discloses that a violation does exist which would not be a criminal violation, he *may* by conference, conciliation and persuasion endeavor to eliminate the violation. (emphasis added)

4. In the case of the failure by conference, conciliation and persuasion to correct or remedy any violation, the director *may* order abatement, suspend or revoke a permit, whichever action or actions the director deems appropriate. The director shall cause to have issued and served upon the person a written notice of such order together with a copy of the order, which shall specify the provisions of sections 643.010 to 643.190 or the rule or the condition of the permit of which the person is alleged to be in violation, and a statement of the manner in, and the extent to which the person is alleged to be in violation. Service may be made upon any person within or without the state by registered mail, return receipt requested. Any person against whom the director issues an order may appeal the order to the commission within thirty days, and the appeal shall stay the enforcement of such order until final determination by the commission. The commission may sustain, reverse, or modify the director's order, or make such other order as the commission deems appropriate under the circumstances. . . . (emphasis added)

. . .

6. After due consideration of the record ... the commission shall issue and enter the final order, or make such final determination as it shall deem appropriate under the circumstances, and it shall immediately notify the petitioner or respondent thereof in writing. . . .

7. Any final order or determination or other final action by the commission shall be approved in writing by at least four members of the commission.

Using this statute as support, appellant claims the circuit court was deprived of jurisdiction because respondents did not allege any attempts at elimination of an alleged violation by conference, conciliation and persuasion, any charges filed providing for a hearing before the MACC within 30 days, any final order signed by at least four members of the MACC being issued, or any request by the MACC for the Attorney General to bring an action.[4]

■ Our analysis of appellant's claims involves construction of the terms of the statute in question. Judicial construction of a statute should effectuate the plain meaning of statutes and not surmise what the legislature may have intended to say or inadvertently failed to say. *State ex rel. Igoe v. Bradford*, 611 S.W.2d 343, 349 (Mo.App. 1980). If the provisions of a statute are express and not ambiguous, the court is not at liberty to construe the language in accordance with the intentions of supporters or opponents of the legislation because the court functions to enforce the law as it is written. *Id.* Words used in statutes are considered in their plain and ordinary meaning in order to ascertain the intent of the lawmakers. *Bartley v. Special School Dist. of St. Louis County*, 649 S.W.2d 864, 867 (Mo. banc 1983).

■ Appellant's argument that there must be adjudicatory administrative hearings prior

---

2. "Director" is defined at section 643.020(28) as the director of the department of natural resources.

3. "Department" is defined at section 643.020(27) as the department of natural resources of the State of Missouri.

4. Failure to comply with a statute is jurisdictional. *Britz v. Reynolds*, 895 S.W.2d 645, 648 (Mo. App.1995) (*quoting State ex rel. Burns v. Stanton*, 311 S.W.2d 137, 140 (Mo.App.1958)).

to the charging of a violation by the state is an inaccurate interpretation of the statute in question. Section 643.080.3 states that the director *may* endeavor to eliminate a violation by conference, conciliation and persuasion. If this option is pursued and fails, then the director *may* initiate the proceedings outlined in section 643.080.4. Use of the word "may" in a statute implies alternate possibilities and that the conferee of the power has discretion in the exercise of the power. *State v. Patterson,* 729 S.W.2d 226, 228 (Mo. App.1987); *State Bd. of Registration for the Healing Arts v. Finch,* 514 S.W.2d 608, 614 (Mo.App.1974). The word "may" in the statutory provisions in question defeats appellant's claim that they provide the exclusive adjudicatory means for eliminating a violation.

■ Appellant also overlooks the other option for eliminating a violation implied by the language in section 643.080. This option is found at section 643.151.1,[5] which provides:

> 1. It is unlawful for any person to cause or permit any air pollution by emission of any air contaminant from any air contaminant source located in Missouri.... In the event the commission determines that any provision of sections 643.020, 643.040 to 643.100, 643.120, 643.140 to 643.170, 643.190 and 643.195, standards, rules and regulations promulgated hereunder, permits issued, or any final order or determination made by the commission or the executive secretary is being violated, *the commission may cause to have instituted a civil action in any court of competent jurisdiction for injunctive relief to prevent any further violation of for the assessment of a penalty....* The commission may request either the attorney general or other counsel to bring such action in the name of the people of the state of Missouri.... (emphasis added)

Section 643.151 is separate and distinct from section 643.080. Section 643.151.1 grants the MACC the right to refer a case to the attorney general to file a civil action under certain circumstances. ICM's failure to comply with the March 9, 1992 order[6] and the earlier notices of violations of 10 CSR 10–6.060, 10–6.110, and 10–6.150 issued by inspectors of the MACC provided a sufficient basis for the MACC to refer the matter to the attorney general if it so desired, as ICM admitted to a portion of the violations and admitted that it has not complied with the orders. Contrary to appellant's representations, the uncontradicted evidence in the record is that the MACC voted to refer the ICM case to the attorney general at its January and February 1992 meetings.

This reading of the statute is consistent with the overall intent of the law to maintain purity of the air resources of the state to protect the health, general welfare and physical property of the people of the state through the prevention, abatement and control of air pollution by all practical and economically feasible methods. § 643.030, RSMo 1991 Supp. Without the option provided by section 643.151, full blown administrative proceedings, which are often extremely lengthy, would have to be completed before seeking any type of injunction in a civil suit to prevent further violations of the law through contaminant emission. Allowing the MACC to refer the matter to the attorney general for civil action when it is determined that a party has clearly violated the statute or refused to comply with rules, permits, or orders is consistent with the statutory mandate and necessary for effective implementation of the law.

ICM's argument that the requirements of section 643.080 must be fulfilled before referral to the attorney general for civil action is without merit in light of the language of section 643.080 and the provisions contained in section 643.151. The circuit court was not deprived of jurisdiction to hear this matter,

---

5. Section 643.151 was amended in 1993, but the parties agree, as do we, that the prior version of this statute is applicable to the case at bar.

6. Section 643.050.1(6) grants the MACC the power to cause to be instituted in a court of competent jurisdiction legal proceedings to compel compliance with any final order or determination entered by the MACC or the Director.

as the case was properly before the court pursuant to section 643.151.

## III. *MDNR'S POWER TO COMPEL TESTING*

The purpose of Count IV of respondents' petition was to judicially enforce the order to perform particulate matter and opacity tests. There is no dispute between the parties regarding the authority of the MDNR to require such testing in general. The issue asserted by ICM deals with the type of test required.

First, ICM contends it is exempt from particulate matter testing. ICM discusses several sections of the Missouri Code of Regulations dealing with construction permits, exemptions from requirements of data submission and emission fees. Having reviewed these sections, they do not provide the requisite conclusions to support ICM's argument. Although ICM did not have to obtain a construction permit because of its existence prior to April 11, 1980, this does not mean it is exempt from testing.[7] Further, though ICM may be classified as a *de minimis* source which exempts it from submitting an annual emission report used to calculate an emission fee, this does not exempt ICM from testing.[8] No such language is contained in either of the regulations referred to by ICM.

ICM also contends it is exempt from testing under the so called particulate matter rule found at 10 CSR 10–2.030, which states in part:

> (1)(A) This regulation applies to any operation process or activity *except* the burning of fuel for indirect heating in which the products of combustion do not come into direct contact with process materials, the burning of refuse and the processing of salvageable material by burning and catalytic cracking units at petroleum refineries.

ICM merely states that this regulation applies to exempt its installation, and then con-

cludes its argument. The uncontradicted testimony from respondents' expert was the ICM's facility utilized an industrial process involving the smelting of material and a sweating process, rather than a burning process. Consequently, ICM's facility did not involve burning and was not exempt from the requirements of 10 CSR 10–2.030.

Having found that ICM's facility is not exempt from testing, we next address ICM's argument regarding the specific type of testing required by the MDNR. ICM phrases this issue as whether respondents have the authority to compel a specific type of particulate matter emission test to the exclusion of all other tests that can provide the same information.

The authority to issue the test order in question is found at section 643.050.1(5) and 10 CSR 10–6.180, which states in part:

> The director may require any person responsible for the source of emission of air contaminants to make or have made tests to determine the quantity or nature, or both, of emission of air contaminants from the source. The director may specify testing methods to be used in accordance with good professional practice. The director may observe the testing. All tests shall be conducted by reputable, qualified personnel. The director shall be given a copy of the test results in writing and signed by the person responsible for the test.

The order in question provided that ICM was to test for particulate matter and opacity and that the "methods and protocol for these tests shall be submitted to and approved by the Department of Natural Resources...."

The methods for testing particulate emissions are set out at 10 CSR 10–6.030(5). Uncontroverted expert testimony affirmed that the methods provided by the law were in accordance with good professional practice. ICM's argument implies that this testing required a "stack test" that could not be performed on its facilities because there is no

---

7. *See generally* 10 CSR 10–6.060.

8. *See generally* 10 CSR 10–6.110.

stack. ICM then states that "the only remaining question is whether the attorney general has the authority to put a businessman out of business by requiring him to perform an act that is physically impossible to be done." This overlooks the obvious language in the order that ICM was free to submit the methods and protocol for a different type of test to MDNR for approval. ICM did not seek approval for the one set of tests it did attempt. ICM simply failed to exercise the options it was provided by law and under the order and cannot now rely on its own lack of diligence as a defense to respondents' claims.

The trial court did not err in concluding that the respondents had authority to require particulate matter and opacity testing of ICM. The uncontradicted evidence is that ICM failed to comply with the test order. The order of the trial court granting summary judgment to respondents on Count IV of their petition is affirmed.

All concur.