# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

————

No. 04-6053EM

————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Charles Benn, Jr., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Charles Benn, Jr., | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Debtor - Appellant. | * | Eastern District of Missouri |
| | * | |
| v. | * | |
| | * | |
| James S. Cole, | * | |
| | * | |
| Trustee - Appellee. | * | |

————

No. 04-6054EM

————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Steven Mohrhard and | * | |
| Jennifer Mohrhard, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Steven Mohrhard and | * | Appeal from the United States |
| Jennifer Mohrhard, | * | Bankruptcy Court for the |
| | * | Eastern District of Missouri |
| Debtors - Appellants. | * | |

                                                    *
              v.                                    *
                                                    *
James S. Cole,                                      *
                                                    *
       Trustee - Appellee.                          *

                            _____

                   Submitted: March 2, 2006
            Filed: April 6, 2006 (Corrected June 30, 2006)
                            _____

Before KRESSEL, Chief Judge, VENTERS, and MAHONEY, Bankruptcy Judges.
                            _____

MAHONEY, Bankruptcy Judge.

       These cases were consolidated for purposes of oral argument on appeal.  The appeal in each case is from an order of the bankruptcy court filed September 24, 2004, overruling a claim of exemption to a federal and state tax refund and ordering turnover of the refund to the Chapter 7 Trustee.  This matter was originally submitted after oral argument on February 8, 2005.  The panel remanded the matter to the bankruptcy judge for particular findings.  The findings have been made and the matter was reargued on March 2, 2006.  For the reasons stated below, we reverse.

                        STANDARD OF REVIEW

       The findings of fact are uncontested and no review thereof is sought by the parties.  The matter before the court concerns a conclusion of law.  Conclusions of law are reviewed de novo.  Ardrey v. Blackwell (In re Ardrey), 316 B.R. 531, 532 (B.A.P. 8th Cir. 2004). A bankruptcy court's denial of a claim of exemption is a final, appealable order.  Id.

2

## BACKGROUND

Mr. Benn filed a petition under Chapter 7 on December 31, 2003. In his third amended schedules, he claimed an exemption in all possible 2003 tax refunds under Mo. Rev. Stat. § 513.427, 26 U.S.C. § 6402, and 31 U.S.C. § 3727. The trustee filed an objection to the claimed exemption. Prior to an order being entered concerning the claim of exemption, the debtor received a refund of the 2003 federal income tax withholdings in the amount of $1,502. He also received a refund of the 2003 state income tax withholding in the amount of $36. The attorney for the debtor is holding the refunds pending a final judgment. After the debtor received the refund checks, the Trustee filed a motion for turnover of the refunds to which the debtor objected.

Steven Mohrhard and Jennifer Mohrhard filed a Chapter 7 petition on November 14, 2003. In their original schedules, the debtors claimed an $800 exemption in their 2003 tax refunds, which were estimated in the total amount of $2,154. Thereafter, the Trustee filed a motion for turnover of the refunds. Prior to a hearing on the motion for turnover, the debtors received a refund of 2003 federal income tax withholdings in the amount of $8,091.60. They also received a refund of 2003 state income tax withholdings in the amount of $1,080. The attorneys for the debtors are holding the original refunds pending a final judgment. After receiving the refund checks, the debtors filed an amended Schedule C claiming that all of the 2003 tax refunds are exempt pursuant to Missouri statutes. The Trustee then filed an objection to exemptions.

In each case, the bankruptcy judge found, based upon prior case law in the district, that a debtor's anticipated tax refund is not exempt. The court therefore sustained the Trustee's objection to exemptions and ordered turnover to the Trustee.

DISCUSSION

Each of the debtors claimed that the federal and state tax refunds were exempt under Missouri law, relying upon a specific Missouri statute, Section 513.427.[1] That statute permits debtors to exempt any property that is not subject to attachment and execution under Missouri or federal law. The Missouri legislature has specified which property may be seized and sold upon attachment and execution in Section 513.090. In addition, the Missouri legislature has defined in Section 521.240 other types of property which may be attached. Neither statute specifically mentions an anticipated state or federal tax refund as property which may be attached.

The phrase "exempt from attachment and execution" is not defined in Missouri statutes. It is also apparently not defined in Missouri case law. However, Missouri practitioners have ample authority with regard to the meaning of the terms attachment and execution. As discussed in appellants' consolidated reply brief, at 2-3, the meanings have been clearly defined in Missouri in various treatises and practice aids. See, e.g., 2 Mo. Practice Series, Methods of Practice: Litigation Guide § 23.2 (West 4th ed. 2002) ("An 'execution' is the writ or process by which a judgment creditor is able to enforce the court's judgment and reach the nonexempt assets of the judgment debtor."); 7 C.J.S. Attachment § 1 (West 2004) ("Attachment is a remedy by which

---

[1]513.427.  Bankruptcy, exemptions allowed.

Every person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the state of Missouri or under federal law, other than Title 11, United States Code, Section 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, Section 522 (d).

Mo. Rev. Stat. § 513.427.

4

the defendant's property is secured and held to satisfy a debt that the plaintiff hopes to prove or the writ by which the purpose of the proceeding is accomplished."). Pre-judgment attachments are in derogation of the common law. State ex rel. Froidl v. Tillman, 662 S.W.2. 907 (Mo. Ct. App. 1983). Prejudgment attachments are a creature of statute. 7 C.J.S. Attachment § 2 (West 2004). See also Mo. Rev. Stat. § 521.010 *et seq*.

Two bankruptcy decisions from the Eastern District of Missouri relied on a straightforward view of the terms "attachment and execution" in the statute. In re Sanders, 69 B.R. 569 (Bankr. E.D. Mo. 1987) and In re Mitchell, 73 B.R. 93 (Bankr. E.D. Mo. 1987). In Sanders, the court was required to determine whether a certain amount of pre-petition wages could be exempted pursuant to Section 513.427. The court ruled that the Missouri wage garnishment statute, when read in conjunction with Section 513.427 made certain pre-petition wages exempt under Missouri law. The Sanders court, when discussing Section 513.427, observed that "the 'opt-out' statute itself clearly implies that bankrupt and non-bankrupt debtors are to be treated alike in terms of the exemptions available to them." Sanders, 69 B.R. at 576. The Mitchell court quoted that language with approval. 73 B.R. at 95.

The Mitchell case dealt with whether an unliquidated pre-petition claim for personal injury was exempt under Section 513.427. Since there was not a specific statute dealing with exemption of personal injury claims, the debtors had claimed their interest in the cause of action for personal injury as exempt under the statutory language of Section 513.427. The court, when discussing the type of items of property which may be subject to attachment, stated the following:

> In a 1970 case the Missouri Court of Appeals cited an 1876 Missouri Supreme Court case for the proposition that "'The debt for which an attachment may issue must possess an actual character and not be merely possible, and dependent upon a contingency which may never happen.'" State, Government Employees Ins. Co. v. Lasky, 454 S.W.2d

942, 950 (Mo. App. 1970); citing, <u>Hearne, et al. v. Keath, et al.</u>, 63 Mo. 84, 89 (1876). The court in the <u>Lasky</u> case further noted that "by an unbroken line of decisions since that time our Courts have held that to be the subject of a garnishment the debt must be certain and not contingent." <u>Lasky</u>, 454 S.W.2d at 950.

73 B.R. at 95.

In this case, the tax refunds that the trustee argues are not exempt did not exist in fact on the petition dates. Both petition dates precede the end of the tax year. The refunds, if any, could not be determined by the Internal Revenue Service or anyone else on the petition date, because of income which could have been earned following the filing of the petition, or of deductions or credits for which the debtors/taxpayers may have been eligible following the petition date. Therefore, the "refunds" in question were contingent and not certain on the petition date. Under the <u>Lasky</u> analysis as discussed in <u>Mitchell</u>, such contingent interest could not be attached under Missouri law by any creditor.

Section 513.427 was again discussed in <u>Gaines v. Nelson (In re Gaines</u>), 121 B.R. 1015 (W.D. Mo. 1990). In <u>Gaines</u>, the debtors had argued that ERISA-qualified pension plans and individual retirement accounts were exempt under Section 513.427 because they could not be attached or executed upon.

The district court, sitting in an appellate capacity, wrote:

It would seem that the same plain reading of the statute given § 513.427 by the <u>Sanders</u> and <u>Mitchell</u> courts results in ERISA funds being covered by the state exemption statute. In other words, 1) Missouri has opted-out and has chosen to allow as exempt in bankruptcy "any property that is exempt from attachment and execution under . . . Missouri or . . . federal law"; 2) ERISA benefits are made exempt from

6

attachment and execution by Section 206(d) of ERISA; so therefore, 3) ERISA pension benefits are exempt in bankruptcy in Missouri.

121 B.R. at 1020.

The Gaines court then stated: "This Court holds that the debtors' interest in their ERISA pension plans are exempt under Missouri's state exemption statute (§ 513.427) *if the statute has not been preempted by ERISA*." Id. He then found that the statute had been preempted by ERISA and therefore the debtors could not use Section 513.427 to exempt the ERISA benefits.

The Sanders, Mitchell, and Gaines cases indicate that those courts felt the statutory language was clear and should be applied as written. That reading of Section 513.427 is consistent with what has now become known as "plain meaning doctrine" when analyzing and interpreting statutory language. The United States Supreme Court, in United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989), requires such statutory analysis to begin with "the language of the statute itself."

Similarly, under Missouri non-bankruptcy case law, when considering the meaning of a statute, a court

> "is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." Wolff Shoe Co. v. Dir. of Revenue, 762 S.W.2d 29, 31 (Mo. banc 1988) [sic]. There is no need to construe legislative provisions when the language is clear and unambiguous. Id. "In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence." Id. The plain and ordinary meaning of statutory language not expressly defined by statute is typically found in the dictionary. Westrope & Assocs. v. Dir. of Revenue, 57 S.W.3d 880, 883 (Mo. [Ct.] App. 2001). "Only when the language is ambiguous or if its plain meaning would lead to an illogical result will the court look past

7

the plain and ordinary meaning of a statute." <u>Lonergan v. May</u>, 53 S.W.3d 122, 126 (Mo. [Ct.] App. 2001).

<u>Polzin v. Bank of Holden</u>, 153 S.W.3d 353, 357 (Mo. Ct. App. 2005). <u>Accord</u> <u>Southwestern Bell Yellow Pages, Inc. v. Director of Revenue</u>, 94 S.W.3d 388, 390 (Mo. 2002) (en banc) ("A court is to consider statutory terms not defined by the legislature in 'their plain or ordinary and usual sense.' . . . If some ambiguity persists in the statute after consulting a dictionary, courts derive meaning from the intent of the legislature. Courts cannot add words to a statute under the auspice of statutory construction." (internal citations omitted)). <u>See also</u> <u>State ex rel. Nixon v. Boone</u>, 927 S.W.2d 892, 896 (Mo. Ct. App. 1996) ("Judicial construction of a statute should effectuate the plain meaning of statutes and not surmise what the legislature may have intended to say or inadvertently failed to say. If the provisions of a statute are express and not ambiguous, the court is not at liberty to construe the language in accordance with the intentions of supporters or opponents of the legislation because the court functions to enforce the law as it is written." (internal citations omitted)).

The question of whether a tax refund is the type of property which is exempt from "attachment and execution" within the meaning of Section 513.427 was first discussed in the case of <u>Davis v. Robinson (In re Robinson)</u>, 152 B.R. 956 (Bankr. E.D. Mo. 1993). The debtors in that case relied on the language of 26 U.S.C. § 6402, a provision of the Internal Revenue Code which restricts garnishments or interception of tax refunds in the possession of the IRS.

The debtors in the cases before this court similarly relied upon the most recent version of that statute. Section 6402 was summarized by the <u>Robinson</u> court as follows:

> Section 6402 of the Internal Revenue Code restricts garnishment or interception of tax refunds in the possession of the IRS. Subparagraph (a) of this section states the general rule that the IRS will refund the

balance of any overpayment to a taxpayer subject only to reduction in the amount of the refund for other outstanding tax liabilities and for payment of selected obligations described in subparagraph (c) and (d) of § 6402. . . . Subparagraph (d) authorizes the IRS upon notification from any federal agency that the taxpayer owes a legally enforceable debt to that agency to reduce the amount of the tax refund and remit payment to the appropriate federal agency . . . . Pursuant to § 6402, the IRS may pay a taxpayer's refund only to the taxpayer and to those entities described in § 6402; all other attempts to garnish a tax refund are ineffective against the government.

152 B.R. at 958 (internal citations omitted).

The statutory authorization permitting the IRS to act as described in the Robinson case remains the same in today's version of Section 6402.

The debtors in Robinson filed their bankruptcy petition after the end of the tax year. Therefore, at the time of the petition, all income, deductions and credits which could have accrued to the benefit or the detriment of the debtors with regard to the potential refund had occurred. The IRS actually held funds in the form of a refund obligation.

The Robinson court acknowledged that most creditors may not attach or execute upon a tax refund in the possession of the IRS, but found that because certain governmental creditors may "reach" the refund, the refund actually was equivalent to property subject to attachment and execution. 152 B.R. at 959.

In contrast to the Robinson case, in these cases there was no refund available on the petition date and there was no means by which any creditor, including the federal or state governments, could have obtained "access" to, "reached," or set off against the contingent interest of the debtors.

9

Section 513.427 clearly states that property is exempt if it is "exempt from attachment and execution under the law of the state of Missouri or under federal law." As a matter of federal law, tax refunds are not subject to attachment, execution or garnishment in the hands of the Internal Revenue Service. See, 26 U.S.C. § 6402 and Robinson, supra, at 958. In addition, the United States, the states and their political subdivisions and agencies cannot be summoned as garnishees in any action, without statutory authorization or consent or waiver. See, 6 Am. Jur. 2d, Attachment and Garnishment § 78, and the cases cited therein. Congress has provided a specific example of an authorization of garnishment of the federal government in 42 U.S.C. § 659. That statute permits garnishment of the wages due from the government to a federal employee, but only to enforce the legal obligations of the employee to pay child support or alimony.

Although the Robinson court determined that tax refunds could not be attached or executed upon pursuant to Section 6402 of the Internal Revenue Code, it found that the debtors could not exempt the tax refund because Section 6402 permitted the federal government and the state government, in limited circumstances, to reach the tax refund.

Section 6402 of the Internal Revenue Code does not authorize attachment, execution, or garnishment of the federal government. Instead, it provides an exception to the general rule that refunds will be paid by the Internal Revenue Service directly to the taxpayer. It permits, by statute, an "off set" of past due child support against tax overpayments. Section 6402(c). In addition, it permits the Internal Revenue Service, upon receiving appropriate notice from a federal agency that a taxpayer owes a past-due legally enforceable debt other than support, to use the taxpayer's refund to pay such debt. Section 6402(d). Finally, Section 6402(e) authorizes the Internal Revenue Service, upon receiving notice from any state that a taxpayer owes past-due legally enforceable state income tax obligations, to pay the amount of the refund over to the state to the extent of the amount of the past-due tax obligation.

10

The authorization granted in Section 6402 to the Internal Revenue Service is statutory. The procedure for implementing the statute, whether by a state or a federal agency, does not involve "attachment and execution." In contrast to 42 U.S.C. § 659(a) referred to above, which permits the federal government to be garnished for employee wages for child support or alimony, there is no similar federal statute which permits garnishment, attachment or execution upon the federal government when it holds tax refunds, anticipated or liquidated.

In addition to the requirement that courts give a plain meaning to statutory language, courts construing the Missouri exemption statutes must consider that such statutes were enacted for the relief of the debtor, and more particularly for the family, and should be liberally construed. Murray v. Zuke, 408 F.2d 483, 487 (8th Cir. 1969).

Following the plain meaning doctrine, and giving liberal construction to the Missouri exemption statutes, we find the intent of the legislature, when enacting Section 513.427, was to permit debtors to exempt any property that was not subject to "attachment and execution" as those terms are commonly used. Because tax refunds are not subject to "attachment and execution," under Missouri or federal law, tax refunds are exempt under the Missouri statutory provision, Section 513.427.

CONCLUSION

The order of the bankruptcy court disallowing the exemption of the tax refunds in each of the argued cases is reversed, and the matters are remanded to the bankruptcy court for further proceedings consistent with this opinion.

11

Venters, J. Concurring.

I write in concurrence for the sole purpose of underscoring my belief that tax refunds are exempt because they are immune from attachment and execution under federal common law.

A great deal of attention in this case has been directed to a consideration of whether the tax refunds in the hands of the I.R.S. are exempt under Missouri law, raising such difficult questions as, "What is the meaning of attachment and execution?" and "Does defining attachment and execution to exclude non-traditional forms of attaching assets render § 513.427 unconstitutional?" But this focus is misplaced and unnecessarily complicated.

Section 513.427, standing alone, does not create any new exemptions. It simply states the obvious – that bankrupt debtors in Missouri may claim as exempt any property that other, non-bankrupt debtors may claim as exempt, and that is "any property that is exempt from attachment and execution under the law of the state of Missouri or under federal law." These exemptions are not limited to property that is expressly or specifically exempted by statute, as the dissent seems to suggest, nor are they limited to property exempt under Missouri law.

At the risk of oversimplification, under federal law, creditors cannot attach or execute on a debtor's property in the hands of the federal government without a specific waiver of sovereign immunity. Neither the federal government nor any of its agencies (including the Department of the Treasury and the Internal Revenue Service)

12

have waived sovereign immunity to allow the attachment and execution of tax refunds owed to taxpayers. The procedure for intra- or inter-governmental set-off does not constitute "attachment or execution," regardless of whether § 513.427 is interpreted broadly or narrowly. Therefore, undistributed tax refunds are exempt.

Finally, this analysis does not turn on whether the tax refunds are liquidated or unliquidated. Although the tax refunds at issue here were unliquidated, inasmuch as the cases were filed before the end of the tax year, I do not believe that it can be logically argued that liquidation of the tax refund is dispositive or even relevant. Tax refunds that have not been paid to the taxpayer/debtor are exempt from attachment and execution under federal law, regardless of when the bankruptcy case is filed.

KRESSEL, Chief Judge, dissenting.

Because I disagree with the majority's premise that "not being subject to attachment and execution" is the equivalent of "exempt" or exempt from attachment and execution," I dissent.

Before October 1, 1979, the concepts of exempt property and property not subject to attachment were explicitly distinct. Under § 70(a) of the Bankruptcy Act of 1898 ("Act"), the trustee was "vested by operation of law with the title of the bankrupt . . . except insofar as it is to property which is held to be exempt . . . ." 11 U.S.C. § 110(a) (repealed). In other words, exempt property never came into what we now call the estate. The bankrupt could claim property as exempt under § 6 of the Act, which provided, *inter alia*, the "Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or

by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile . . . ." 11 U.S.C. § 24 (repealed).

In contrast with the concept of exempt property under the Act, the trustee was vested by operation of law with title to all of the bankrupt's other property, which included, *inter alia*, "property, including rights of action, which prior to the filing of the petition [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . ." 11 U.S.C. § 110(a)(5) (repealed). In other words, like exempt property, rights of action not subject to levy did not become property of the estate, but for a different reason. If the lack of ability to be levied on resulted in property being exempt, then the latter provision would have been superfluous. See *TRW, Inc. v. Andrews,* 524 U.S. 19, 31 (2001) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152 (1883) "It is our duty 'to give effect, if possible to every clause and word of a statute.'")

A debtor's right to a tax refund is nothing more than a right of action and the United States Supreme Court held that an "income tax refund [was] 'sufficiently rooted in the pre-bankruptcy past' to be defined as 'property' under § 70a(5)." *Kokoszka v. Belford*, 417 U.S. 642, 648 (1974) (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)). Thus, the Supreme Court made clear that a distinction must be made between exempt property and property of the estate which was capable of being "levied upon and sold under judicial process . . . ." under 11 U.S.C. § 110(a)(5) (repealed). Current Department of the Treasury regulations support the premise that a properly executed income tax return constitutes a claim for a refund. See, 26 C.F.R.

§ 301.6402-3(a)(5) (1994) (The Code of Federal Regulations provides that "[a] properly executed individual . . . original income tax return or an amended return . . . shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return (or amended return).").

The Bankruptcy Code eliminated exclusion from the estate based on inability to be levied on, but left essentially untouched the concept of exemption, at least for those debtors who choose not to or cannot use the bankruptcy exemptions iterated in § 522(d). There is nothing in the Code which indicates an intent on the part of Congress to retain the concept of exclusion from the estate based on inability to be levied on, but now as part of exemption law. See *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" quoting *Emil v. Hanley*, 318 U.S. 515, 521 (1943)). However, I think that is exactly what the majority is doing.

Although the pertinent language of the Bankruptcy Act of 1898 morphed a bit as it was transformed into the corresponding provisions of the Bankruptcy Code, the same distinction remains today between property that is exempt and property that is "subject to attachment and execution" or capable of being "levied upon", "attached," etc. Indeed, the Supreme "Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Dewsnup*, 502 U.S. at 419 (citing *United Savings Assn. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 380

(1988); *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 563 (1990); and *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 244-245 (1989)).[2] Under the Bankruptcy Code,

> An exemption is [still] an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor. Section 522 determines what property a debtor may exempt. Under § 522(b), he [sic] must select between a list of federal exemptions (set forth in § 522(d)) and the exemptions provided by his State, "unless the State law that is applicable to the debtor . . . specifically does not so authorize," § 522(b)(1)--that is, unless the State "opts out" of the federal list. If a State opts out, then its debtors are limited to the exemptions provided by state law.

*Owen v. Owen*, 500 U.S. 305, 308 (1991).[3]

---

[2] Had Congress wanted to insert the phrase "exempt from attachment and execution" (or "not subject to attachment") in place of the word "exempt" in § 522(b)(2)(A), it could have easily done so (and changed the Act concept of "exempt"). However, it did not do so.

[3] As to this latter point in *Owen*, the Eighth Circuit has acknowledged that "Missouri, the residence of the [debtors] has exercised this option." *Garner v. Strauss (In re Garner)*, 952 F.2d 232, 234 (8th Cir. 1991) (citing Mo. Rev. Stat. § 513.427); *Wallerstedt v. Sosne (In re Wallerstedt)*, 930 F.2d 630, 631 n.1 (8th Cir. 1991) ("In 1982 the Missouri legislature [via Mo. Rev. Stat. § 513.427] opted out of the federal exemption scheme pursuant to 11 U.S.C. § 522(b)(2) (1988), thereby restricting Missouri residents to the exemptions available under Missouri law and under federal statutes other than 11 U.S.C. § 522(d)."); *Abernathy v. LaBarge (In re Abernathy)*, 259 B.R. 330, 333 (B.A.P. 8th Cir. 2001) ("As permitted by 11 U.S.C. § 522(b)(2)(A), Missouri has chosen to opt out of the exemption scheme provided under the Bankruptcy Code."). Given this, I question whether Mo. Rev. Stat. § 513.427 is really an exemption statute at all or merely a wordily drafted opt-out statute. I think a fair reading of Mo. Rev. Stat. § 513.427 is that it is *only* an opt-out statute; not an exemption statute nor some hybrid of the two.

While exemption may mean different things in different contexts, in the context of § 522 it refers to laws enacted by the legislative branch which explicitly identify property judgment debtors can keep away from creditors for reasons of public policy. *In re Pritchard*, 75 B.R. 877, 879 (Bankr. D. Minn. 1987) (discussing the "central and common characteristic of exemption statutes" and noting that "exemptions have no legal existence independent of statute").

Examples of non-bankruptcy federal exemption statutes include:

-- foreign service retirement and disability payments, 22 U.S.C. § 4060;
-- social security payments, 42 U.S.C. § 407;
-- injury or death compensation payments from war risk hazards, 42 U.S.C. § 1717;
-- wages of fishermen, seamen, and apprentices, 46 U.S.C. § 11109;
-- civil service retirement benefits, 5 U.S.C. § 8346;
-- Longshoremen's and Harbor Worker's Compensation Act death and disability benefits, 33 U.S.C. § 916;
-- Railroad Retirement Act annuities and pensions, 45 U.S.C. § 231m;
-- veterans benefits, 38 U.S.C. § 5301;
-- special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. § 3101;
-- railroad unemployment insurance benefits, 45 U.S.C. § 352(e);
-- government employees' disability or death benefits for work-related injuries, 5 U.S.C. § 8130;
-- military survivors' benefits, 10 U.S.C. § 1450(i);
-- military annuities, 10 U.S.C. § 1440;
-- military pension benefits, 38 U.S.C. § 5301;
-- insurance benefits paid under Servicemembers' Group Life Insurance or Veterans' Group Life Insurance, 38 U.S.C. § 1970;

17

> -- Central Intelligence Agency Retirement and Disability System payments, 50 U.S.C. § 2094; and
> -- federally insured or guaranteed student loans, grants, and work assistance, 20 U.S.C. § 1095a(d).

4 Collier on Bankruptcy ¶ 522.02[3] (15th ed. rev. 2005). If nothing else, this list indicates that Congress knows full well how to create an exemption when it wants one.

Examples of Missouri exemption statutes are found at Mo. Rev. Stat. §§ 513.430 (personal property exemptions), 513.440 (head of household exemption), 513.460 (fire fighting equipment exemption), and 513.475 (homestead exemption). Each of these Missouri statutes identifies specific categories of property. However, there is no Missouri statute that exempts tax refunds.

§ 6402 requires the Secretary of the Treasury to pay a refund to the taxpayer, subject to certain rights of governmental setoff. *Sorenson v. Secretary of Treasury of U.S.*, 475 U.S. 851, 854-856 (1986). While § 6402 of the Internal Revenue Code has been interpreted to mean that creditors cannot attach refunds (except for limited rights of setoff for certain governmental creditors), those limitations benefit the IRS, and the exceptions benefit the federal and state governments. See *In re Pritchard,* 75 B.R. at 880. The limitation and its exceptions are not designed to benefit the taxpayer. § 6402 is by no stretch of the imagination an exemption statute. Similarly, anti-assignment provisions do not make 31 U.S.C. § 3727 an exemption statute. "The fact that [it] contain[s] anti-assignment provisions is a mere fortuity." *In re Pritchard*, 75 B.R. at 879.

The Missouri attachment statutes, §§ 521.240 and 513.090, which identify categories of property under Missouri law that are subject to attachment and subject

18

to sale under attachment and execution, respectively, are based on issues of choatness and practicality and are likewise not exemption statutes. See generally *State ex rel. Auchincloss, Parker & Redpath v. Harris*, 159 S.W.2d 799, 805 (Mo. 1942). In the same way statutory and even constitutional immunity from process are based on principles of protecting the government and the public fisc and do not create exemptions. See, *U.S. v. Horn*, 29 F.3d 754, 761 (1st Cir. 1994) ("sovereign immunity operates on the broadest possible level: it stands as an obstacle to virtually all direct assaults against the public fisc, save only those incursions from time to time authorized by Congress").

In addition to disagreeing with the majority on the law, I fear that there will be the proverbial unintended consequences of today's decision. It will create two categories of debts: those owed by the government and those owed by others. I also think the logical application of the decision is to create an exemption for property outside the state whose exemptions are being used. For example, if these debtors owned property in Kansas, since that property would not be subject to attachment under Missouri law, it would be exempt. This cannot be the law. See, *Drenttel v. Jensen-Carter (In re Drenttel)*, 403 F.3d 611 (8th Cir. 2005).

Since none of the Federal or Missouri statutes relied on by the debtors is an exemption statute, I think the bankruptcy court got it right and I would affirm.

---